MANCINI SHENK LLP
  Michael V. Mancini (S.B. #263799)
  mmancini@mancinishenk.com
  John W. Shenk (S.B. #261573)
  jshenk@mancinishenk.com
  Peter J. Most (S.B. #143963)
  pmost@mancinishenk.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (424) 652-4000
Facsimile: (424) 652-4004

Attorneys for Plaintiff
BUCKY DENT THE FILM, INC.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCKY DENT THE FILM, INC., a New York corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN, an individual; JULIAN BROWN a/k/a JULIAN BRYANT a/k/a JULIAN RAYMOND a/k/a JULES RAYMOND, an individual; STEPHANIE BROWN, an individual; DB FILM LLC, a Wyoming limited liability company; HOLLYWOOD COVID TESTING LLC, a California limited liability company; UNTITLED SLA LLC, a California limited liability company; and CLEAR MEDIA FUND I, LP, a Delaware limited partnership,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **THEFT (CAL. PENAL CODE § 496(c))**<br>2. **WIRE FRAUD (18 U.S.C. §§ 1343 & 1349)**<br>3. **RICO VIOLATIONS (18 U.S.C. § 1962 et seq.)**<br>4. **CONVERSION / RESTITUTION**<br>5. **BREACH OF FIDUCIARY DUTY**<br>6. **AIDING AND ABETTING**<br>7. **NEGLIGENCE**<br>8. **ACCOUNTING**<br>9. **ENTRY OF STIPULATED JUDGMENT**<br>10. **CHECK KITING (CAL. CIV. CODE § 1719)**<br><br>**AND DEMAND FOR JURY TRIAL** |

COMPLAINT                                                          Case No.

1

1    Plaintiff BUCKY DENT THE FILM, INC., by and through its attorneys,

2  Mancini Shenk LLP, for its Complaint against Defendants DAVID BROWN a/k/a

3  DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN ("**David Brown**"),

4  JULIAN BROWN a/k/a JULIAN BRYANT a/k/a JULIAN RAYMOND a/k/a JULES

5  RAYMOND ("**Julian Brown**"), STEPHANIE BROWN, DB FILM LLC,

6  HOLLYWOOD COVID TESTING LLC, UNTITLED SLA LLC, and CLEAR

7  MEDIA FUND I, LP, alleges as follows:

8                     <u>**SUMMARY OF THE CASE**</u>

9                           <u>Background</u>

10    1.    This is the second embezzlement and RICO lawsuit filed by this plaintiff

11  against these defendants. This case is filed after the failure of a partial resolution of

12  the prior lawsuit that was dismissed **without prejudice** as to the very same

13  Defendants: *Bucky Dent the Film, Inc. v. David Brown, et al.*, C.D. Cal. Case No.

14  2:22-cv-08422-RGK-MAR (the "**Prior Lawsuit**"). The partial resolution of the Prior

15  Lawsuit failed because Defendant David Brown bounced a check for $197,500 that

16  Plaintiff's bank cleared and then reversed, leaving Plaintiff with a stipulated judgment

17  against Defendant David Brown, but no lawsuit in which to file it because the Prior

18  Lawsuit had been dismissed without prejudice in reliance upon the bank's clearing of

19  David Brown's kited check.

20    2.    The facts of the dispute are mostly unchanged from the Prior Lawsuit.

21  After he was retained to serve as a production accountant for a feature film project

22  entitled *Bucky F\*cking Dent*, Defendant David Brown and the other Defendants stole

23  what Plaintiff's investigation has demonstrated is at least $717,529.02 by wiring those

24  funds to themselves out of several production accounts that were entrusted to David

25  Brown's care.

26    3.    A production accountant acts in a fiduciary capacity to the producers of

27  a film. A production accountant's duty is to safekeep all production funds, oversee

28  and maintain accurate books and records about the accounting and payments for the



2

4878-1384-8897, v. 5

1  production, and ensure that all necessary payments are made.  He or she is in a position

2  of stewardship and trust and controls financial accounts for the film production, and

3  therefore he or she is obligated to handle production funds in the best interests of the

4  production and to account to the producers accurately and in a timely manner.  If a

5  trusted fiduciary in that position chooses to lie and steal, then his or her ability to

6  enrich him-or-herself is unfettered because the books and records that prove the theft

7  are also under his or her control.

8      4.    Defendant David Brown, in his role as a production accountant for

9  *Bucky*, Defendant Julian Brown in his unauthorized role as a production accountant

10 for *Bucky*, and Defendant Stephanie Brown in her unauthorized role as 1st assistant

11 production accountant for *Bucky* (David, Julian and Stephanie together, the

12 "**Individual Defendants**"), owed fiduciary obligations to Plaintiff (who was and is

13 the production company for *Bucky*), had access to and control of all production

14 accounts, and oversaw the making of production payments and the accounting for

15 those payments.  In fact, they established multiple different accounts for which David

16 Brown was an authorized signatory, which were to be used to pay production

17 expenses after Plaintiff funded the accounts.  But after Plaintiff funded the accounts

18 set up by the Defendants, the Defendants stole production funds out of the accounts

19 by transferring the funds into several of their own non-production accounts, hid their

20 misconduct, and then aggressively lied for months when their misconduct was

21 uncovered.

22     5.    In dozens of communications with Plaintiff and its counsel, the Screen

23 Actors' Guild, CASHét (a payment solution for entertainment industry projects),

24 background actors, service providers, and others, Defendant David Brown repeatedly

25 lied by systematically telling third parties that production expenses had been paid

26 when in fact he and the other Defendants knew the production expenses had not been

27 paid because they had wrongfully transferred the production funds to themselves for

28 their own non-*Bucky* purposes.

COMPLAINT                                                    Case No.

4878-1384-8897, v. 5

MS
MANCINI SHENK

6.     When, following completion of principal photography, Plaintiff discovered (i) that the film was over budget, (2) the improper payments, and (3) that many of the cast and crew had not been paid for their work because of the at least $717,529.02 that Defendants stole from the production, David Brown continued lying. For about a month, he repeatedly represented that the stolen funds were mistakenly sent to the wrong accounts because he and his company and colleagues were working on so many film productions at the same time.  Though this excuse was and remains a lie—Plaintiff is informed and believes, and on that basis alleges, that these actions were intentional theft, not merely gross negligence—even if it were true, Defendants would each still be liable to Plaintiff for negligence.

7.     David Brown also repeatedly misrepresented to Plaintiff that he was reverting the allegedly mistaken transfers of *Bucky* funds that he and his office made to other productions.  He doubled down, routinely lying by stating that he had already authorized returns of those funds, that the "other productions" he claimed he accidentally sent the money to were returning the money, that "he had done nothing wrong," that "confirmations" of the return of the missing funds were forthcoming, that he had fired the "clerk" responsible for the misdirected transfers, that he "had nothing to hide," that "his investors" were reviewing the Prior Lawsuit before he could return the funds, and that because he had allegedly initiated the return of the funds through third parties he no longer had control of the funds.  It was not until after the filing of the Prior Lawsuit that the stolen monies began to be recovered.

8.     Now, at the time of the filing of this lawsuit, $261,050 has been returned to Plaintiff by Defendants and another $311,021.45 has been recovered from third parties. Plaintiff is informed and believes, and on that basis alleges, that the $311,021.45 did not come from Defendants but instead was credited to Plaintiff as part of a fraud response policy carried out by intermediary financial service providers who worked with CASHét and agreed that David Brown and his conspirators defrauded Plaintiff.

4

9.      Regardless, even after crediting the foregoing recoveries against the amounts stolen from Plaintiff, at least $145,454.87 remains in Defendants' possession and has not been returned to Plaintiff, and Plaintiff has suffered considerable additional damages and expenditure of attorneys' fees and costs because of the Defendants' ongoing misconduct.

10.     Thus, in summary, only $572,074.15 of the at least $717,529.02 stolen by Defendants has been recovered by Plaintiff, and Plaintiffs damages are far in excess of the difference between those two sums.

<u>Financial Forgery and Fraud</u>

11.     Moreover, Plaintiff is informed and believes, and on that basis alleges, that to delay the filing of Prior Lawsuit, David Brown forged screenshots of payment confirmations and sent those forged bank records (that allegedly confirmed fake banking transactions) to Plaintiff to pretend he had already sent all of the stolen money back to Plaintiff when he had not done so. Through diligent investigation both before and after the filing of the Prior Lawsuit, Plaintiff has become informed and believes, and on that basis alleges, that David Brown has numerous times in the past, in connection with other schemes to steal money from movie productions, forged, doctored, and faked bank records and sent them via electronic communication to third parties and other victims, in furtherance of theft, fraud, and racketeering activity.

12.     Likewise, to delay the filing of this lawsuit, Defendant David Brown has again falsely promised that payments would be made or had been made. Most strikingly, on February 3, 2023, Plaintiff deposited a check in the amount of $197,750 that was provided and signed by Defendant David Brown from the account of a company called Production Accounting LLC. The check was intended to compensate Plaintiff for the remaining stolen funds and for their attorneys' fees and costs incurred in recovering the other monies in the Prior Lawsuit. On February 7, the check cleared, and Plaintiff dismissed the Prior Lawsuit without prejudice. But on February 8, despite clearing the check, Plaintiff's bank reversed the transaction because the check

5

MS
MANCINI SHENK

had been drawn against insufficient funds by Defendant David Brown. In other words, Defendant David Brown kited a settlement check to Plaintiff in order to obtain the dismissal without prejudice of the Prior Lawsuit.

13.    The consequence of the check kiting are that Plaintiff did dismiss the Prior Lawsuit **without prejudice** in reliance upon that payment, thereby rendering the Court in the Prior Lawsuit unable to accept the filing of the stipulated judgment held by Plaintiff against Defendant David Brown.  Accordingly, in addition to the other requests for relief set forth herein, in this lawsuit Plaintiff seeks enforcement of the existing stipulated judgment against Defendant David Brown.

<u>Consequential Damages</u>

14.    In aggravation of the foregoing, Defendants engaged in these thefts and lies while at the same time SAG, crew, cast, and others were complaining that they had not been paid for work already performed. This was news to Plaintiff, who had been told by David Brown that production expenses had been paid, and only learned after the fact that instead of paying production costs, David Brown and the other Defendants stole more than 20% of the film's budget for themselves. In effect, David Brown continued lying to third parties and to Plaintiff to conceal Defendants' thefts when he knew with certitude that the production and many third parties were being harmed by his failure to return the money.

15.    And David Brown's misconduct did not stop at theft. He also unilaterally hired his husband or boyfriend, Defendant Julian Brown, as another production accountant, and another family member, Defendant Stephanie Brown, as a 1st assistant accountant, onto the *Bucky* project, and used Plaintiff's production funds to pay their salaries without informing Plaintiff that he hired them. Neither David Brown's exorbitant personal salary, nor the hirings of Julian Brown or Stephanie Brown, were budgeted for, authorized, or approved by Plaintiff. Had David Brown asked for permission to make these unilateral hires to increase his household's income, he would have been told that he could not do that. But he never asked. Instead, without

MS
MANCINI SHENK

authorization, he made the hires and paid his household even more money than the production funds he was simultaneously stealing. True and correct copies of the deal memos unilaterally signed by the Individual Defendants are attached as **Exhibits A**, **B** and **C** hereto. All amounts paid to any of them are included in the calculation of damages set forth herein.

16.     Additionally, while investigating the theft, Plaintiff learned that Defendants had committed gross negligence in performing their duties as accountants for *Bucky*. They had never uploaded accounting records to Greenslate (an accounting solution for entertainment industry projects) during production (as is customary) or after production was complete. David Brown's and the other Defendants' thievery was therefore coupled with gross negligence in failing to maintain records and in failing to do their jobs. To date, despite written demand, Defendants' have failed to turn over records concerning the film's accounting, which in turn has prevented Plaintiff from rapidly remedying these problems. A true and correct copy of that written demand is attached as **Exhibit D**.

17.     Now, Plaintiff is exposed to potential liability to third parties and the production is delayed because David Brown and the other Defendants stole, or helped him steal, at least $717,529.02 that should have paid for the completion of *Bucky*, and they did not maintain reasonable books and records about their conduct.

<u>Summary of RICO Allegations</u>

18.     Finally, Plaintiff has discovered that Defendants have engaged in other fraudulent schemes to steal movie production monies in the past, as part of an ongoing pattern of racketeering activity and conspiracy to engage in illegal activity targeting the film industry in California and elsewhere.  For example, Plaintiff is aware of the following cases (the "**Predicate Racketeering Cases**"):

a.     David and Julian Brown and related entities were sued in similar circumstances in *8th Wonder Pictures, LLC v. Lock the Door, LLC, et al.*, Central District of California Case No. 2:21-cv-02463-DSF-

7

MS

MANCINI SHENK

1  JEM (2021);

2  b. David Brown and related entities were sued in similar

3  circumstances in *8th Wonder Pictures, LLC v. Clear Distribution,*

4  *LLC, et al.*, Central District of California Case No. 2:21-cv-00726-

5  DSF-JEM (2021);

6  c. David Brown and related entities were sued in similar

7  circumstances in *Son of the South Owner, LLC v. Clear*

8  *Distribution, LLC, et al.*, Central District of California Case No.

9  2:21-cv-03976-DSF-JEM (2021);

10  d. Entities related to David Brown were sued in similar

11  circumstances in *828 Media Capital LLC v. SSS Film Capital*

12  *LLC, et al.*, Central District of California Case No. 2:21-cv-08054-

13  JAK-GJS (2021), in which a motion to amend the existing

14  pleadings to name David Brown and additional related entities is

15  currently pending;

16  e. David Brown and related entities were sued in similar

17  circumstances in *Red Card, LLC v. Lock the Door, LLC, et al.*, Los

18  Angeles Superior Court Case No. 20STCV08086 (2020);

19  f. David Brown and related entities were sued in similar

20  circumstances in *828 Media Capital LLC v. Fallout LLC, et al.*,

21  Los Angeles Superior Court Case No. 20STCV38935 (2020);

22  g. David Brown, under his pseudonym David Brown Levy, was sued

23  in similar circumstances in *Poteet, et al. v. Levy*, Chancery Court

24  for Davidson County, Tennessee, Case No. 15-1264 (2015);

25  h. In the personal bankruptcy that David Brown filed to stay the

26  *Poteet* litigation, he was found to have engaged in acts of fraud

27  within the meaning of 11 U.S.C. § 523(a)(2) and thus the claims

28  of the *Poteet* plaintiffs were not dischargeable through the

8

MANCINI SHENK

4878-1384-8897, v. 5

bankruptcy process (*In re David Brown Levy*, Central District of California Bankruptcy Court, Case No. 1:15-bk-14037; *Poteet, et al. v. Levy*, Central District of California Bankruptcy Court, Adversary Proceeding No. 1:16-ap-01024);

i.     Plaintiff is informed and believes, and on that basis alleges, that Defendants, and each of them, are currently engaged in a similar fraud involving another production called *Untitled SLA*, which appears to be the production Defendants claim they accidentally misdirected at least some of Plaintiff's money to; and

j.     Through speaking with another victim of a similar scheme perpetrated by David Brown and Julian Brown, Plaintiff is informed and believes, and on that basis alleges, that in March through June of 2022 Defendants carried out a scheme almost identical to the scheme at issue here, whereby David Brown, through his role as a production accountant working on a multi-part horror anthology, used CASHét accounts to direct between $500,000 and $550,000 of production funds to himself through Defendant Hollywood COVID Testing LLC, without any justification, then lied about it to prevent the victim of this slightly earlier scheme (the "**Nearest Predicate Victim**") from filing suit.

19.     Accordingly, Plaintiff is informed and believes, and on that basis alleges, that David Brown and the other Defendants have for a very long time been intentionally engaged in a repetitive and ongoing racketeering enterprise designed to defraud film productions by using control of production accounts entrusted to them to misdirect production funds to David Brown and his family through various entities that have no purpose other than to facilitate the racketeering enterprise. Further, Plaintiff is informed and believes, and on that basis alleges, that Defendants participate in multiple of such schemes each year in what appears to be a shockingly

9

COMPLAINT                                                                    Case No.

4878-1384-8897, v. 5

brazen and obvious criminal enterprise that actively preys upon California's film industry.

20.     Plaintiff is also informed and believes, and on that basis alleges, that even the Director's Guild of America, of which David Brown is somehow still a member, has acknowledged that David Brown appears to run a racketeering enterprise targeting the film industry, because it admitted to the Nearest Predicate Victim that "this seems to happen on [David Brown's] productions," and admitted to Plaintiff that it "has heard about [David Brown] before."

21.     Here, for an example of the fundamental workings of Defendants' racketeering enterprise, Plaintiff has discovered that at least $313,500 of the production funds that were transferred by David Brown to a third-party entity identified in CASHét's transfer records as "Hollywood" were in fact transferred to a California limited liability company formed by David Brown: Defendant HOLLYWOOD COVID TESTING LLC, which is the same vehicle through which Defendants stole the Nearest Predicate Victim's money as well. Throughout this ordeal, David Brown has repeatedly misrepresented that "Hollywood" was a pass-through entity established for New Jersey tax credit purposes. But in truth, it is a shell limited liability company he owns that never had, and does not have, anything to do with *Bucky*, that was created before he worked on *Bucky*, and that was used for other acts of wire fraud and theft as well. It is a funnel for David Brown and the other Defendants to steal money from movie productions.

22.     Additionally, Plaintiff is informed and believes, and on that basis alleges, that Defendant UNTITLED SLA LLC received some of the stolen production funds from the other Defendants. Notably, $17,500 returned to Plaintiff was sent from a bank account that was identified on the transfer record as an account in the name of Defendant Untitled SLA LLC. There is no innocent reason that Untitled SLA LLC possessed Plaintiff's money. Here, on information and belief, Plaintiff alleges that Defendants either stole money from Plaintiff to (at least in part) finance the *Untitled*

10

4878-1384-8897, v. 5

MS

MANCINI SHENK

1    *SLA* production, and/or used the *Untitled SLA* production as a vehicle to commingle
2    funds and create accounting confusion to obfuscate their other thefts. Plaintiff is
3    informed and believes, and on that basis alleges, that since the filing of this lawsuit
4    the *Untitled SLA* production has been shut down after Defendant David Brown and
5    the other Defendants absconded with production funds from that film as well.

6        23.    Further, Plaintiff is informed and believes, and on that basis alleges, that
7    Defendant CLEAR MEDIA FUND I, LP also obtained some of the stolen funds. In
8    particular, after it became clear that Plaintiff needed additional financing to pay third
9    parties because Defendants had stolen hundreds of thousands of dollars of production
10   funds from Plaintiff, **David Brown presented loan documents to Plaintiff through**
11   **which he attempted to use Clear Media Fund I, LP to loan the stolen funds back**
12   **to Plaintiff while collecting considerable interest thereon**.    Obviously, that
13   outrageous offer was rejected.

14       24.    The acts of Defendants constitute theft and wire fraud, conversion,
15   breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing,
16   racketeering activity, check kiting, and unfair business practices, and require an
17   accounting. In the alternative, in the event those claims fail, there is no question the
18   acts alleged herein at least constitute gross negligence for which Defendants are liable.

19       25.    The stipulated judgment held by Plaintiff against Defendant David
20   Brown must also be entered against him in this action.

21       26.    Finally, because the conduct alleged herein constitutes the felony of theft
22   under California Penal Code § 496(a) and (c), wire fraud under 18 U.S.C. § 1343 and
23   1349, passing a bad check under California Civil Code § 1719, and Federal Racketeer
24   Influenced and Corrupt Organizations Act ("RICO") violations under 18 U.S.C. §
25   1962(c), Plaintiff is entitled to recover and therefore seeks treble damages, all costs
26   of suit, and all attorneys' fees incurred in connection with these matters. Because the
27   conduct alleged herein also constitutes fraud, breach of fiduciary duty, and aiding and
28   abetting same, Plaintiff is entitled to recover and therefore seeks punitive damages,

COMPLAINT                                                                    Case No.

MANCINI SHENK

1    all costs of suit, and all attorneys' fees incurred in connection with these matters.

2    <u>**JURISDICTION**</u>

3    27.    This Court has subject matter jurisdiction over this action under 28

4    U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different states,

5    and the amount in controversy exceeds $75,000, exclusive of interest and costs. This

6    Court also has subject matter jurisdiction over this action pursuant to 18 U.S.C. §

7    1964(c) because this action arises, in part, under RICO.

8    28.    This Court has supplemental jurisdiction over Plaintiff's related claims

9    under 28 U.S.C. § 1367.

10   29.    This Court has personal jurisdiction over the Defendants, and each of

11   them, because at all relevant times they were present in, doing business in, operating

12   their principal place of business in, directing their efforts toward, employed within,

13   and/or residing in this District. This Court has personal jurisdiction over the

14   Defendants, and each of them, for the additional reason that each of them purposefully

15   directed actions at this forum to obtain benefits from their scheme perpetrated against

16   Plaintiff in this District. The exercise of jurisdiction over the Defendants, and each of

17   them, is reasonable because each of them conspired with each other to defraud

18   Plaintiff in this District.

19   30.    Additionally, Plaintiff is informed and believes, and on that basis alleges,

20   that the stolen production funds are or were at all relevant times located within or

21   expended within this District, or were transferred out of this District by Defendants

22   only after being obtained within this District.

23   31.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a

24   substantial part of the events or omissions giving rise to the claims occurred in this

25   district, and in that a substantial part of the property that is the subject of the action is

26   or was at all relevant times situated in this district, and in that Plaintiff's losses were

27   suffered in this district.

28   ///



12

## **PARTIES**

32.     Plaintiff BUCKY DENT THE FILM, INC., is a corporation that is incorporated in the State of New York and has its principal place of business in the State of New York. Plaintiff is the production company for, and funded all production accounts for, *Bucky*. According to documents executed by the Individual Defendants, they each agreed with themselves in writing, without authorization from Plaintiff, that they were providing production accountant services to Plaintiff at the time that they stole the funds.

33.     Defendant DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN is an individual who resides in Sherman Oaks, California, and is a citizen of the State of California. Upon information and belief, he resides with Defendant Julian Brown, who is his husband and common co-conspirator. Upon information and belief, David Brown is the sole member and manager of Defendants DB Film LLC and Hollywood Covid Testing LLC. He was a production accountant for *Bucky*.  (*See* Exhibit A.)

34.     Defendant JULIAN BROWN a/k/a JULIAN BRYANT a/k/a JULIAN RAYMOND a/k/a JULES RAYMOND is an individual who resides in Sherman Oaks, California, and is a citizen of the State of California. Upon information and belief, he resides with Defendant David Brown, who is his husband and common co-conspirator. Because of Defendant David Brown's unilateral decision to hire him and through his written consent, he was a production accountant for *Bucky*.  (*See* Exhibit B.)

35.     Upon information and belief, Defendant STEPHANIE BROWN is an individual who resides in Mount Juliet, Tennessee, and is a citizen of Tennessee. Upon information and belief, she is the sister of Defendant David Brown and regularly works for Defendant DB Film LLC in California, thereby directing her efforts toward and seeking rewards from, and also directing ongoing acts of theft and fraud toward, the State of California. Because of Defendant David Brown's unilateral decision to

COMPLAINT                                                                                    Case No.

4878-1384-8897, v. 5

MS
MANCINI SHENK

1   hire her and through her written consent, she was the 1st assistant accountant for

2   *Bucky.*  (*See* Exhibit C.)

3       36.     Defendant DB FILM LLC is a limited liability company formed under

4   the laws of the State of Wyoming that does business in and has its principal place of

5   business in Los Angeles, California. Plaintiff is informed and believes, and on that

6   basis alleges, that DB Film LLC has one member and manager, Defendant David

7   Brown, who is a citizen of the State of California residing in Sherman Oaks,

8   California. DB Film LLC purports to be a loanout company for Defendant David

9   Brown's services.  (*See* Exhibit A.) Plaintiff is informed and believes, and on that

10  basis alleges, that DB Film LLC is one of the instrumentalities through which

11  Defendants carried out the actions complained of herein.

12      37.     Defendant HOLLYWOOD COVID TESTING LLC is a limited liability

13  company formed under the laws of the State of California that has its principal place

14  of business in Los Angeles, California. Plaintiff is informed and believes, and on that

15  basis alleges, that Hollywood COVID Testing LLC has one member and manager,

16  Defendant David Brown, who is a citizen of the State of California residing in

17  Sherman Oaks, California. Plaintiff is informed and believes, and on that basis

18  alleges, that Hollywood COVID Testing LLC is one of the recipients of the stolen

19  funds and one of the instrumentalities through which Defendants carried out the

20  actions complained of herein.

21      38.     Defendant UNTITLED SLA LLC is a limited liability company formed

22  under the laws of the State of California that does business in and has its principal

23  place of business in Los Angeles, California. Plaintiff is informed and believes, and

24  on that basis alleges, that Untitled SLA LLC until recently had one member and

25  manager, Defendant David Brown, who is a citizen of the State of California residing

26  in Sherman Oaks, California, and that a company called Film Holdings LLC that is

27  under David Brown's control, which also has its principal place of business in Los

28  Angeles, California, is now the only member or manager. Plaintiff is informed and

14

MANCINI SHENK

4878-1384-8897, v. 5

believes, and on that basis alleges, that Untitled SLA LLC is one of the recipients of the stolen funds and one of the instrumentalities through which Defendants carried out the actions complained of herein, and that it was or is the production entity for the *Untitled SLA* production that Plaintiff is informed and believes, and on that basis alleges, the Defendants have been defrauding during the pendency of the Prior Lawsuit.

39.    Defendant CLEAR MEDIA FUND I, LP is a limited partnership formed under the laws of the State of Delaware that does business in and has its principal place of business in Los Angeles, California. Plaintiff is informed and believes, and on that basis alleges, that CLEAR MEDIA FUND I, LP is wholly owned and controlled by Defendants David Brown and Julian Brown, who are both residents of Sherman Oaks, California, and citizens of the State of California. Plaintiff is informed and believes, and on that basis alleges, that CLEAR MEDIA FUND I, LP is one of the recipients of the stolen funds and one of the instrumentalities through which Defendants carried out the actions complained of herein.

40.    Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, Defendants, and each of them, provided David Brown with actual and/or implied authority to act on their behalf and contractually obligate each of them to carry out the actions complained of herein, and that each of them with full knowledge thereof cooperated with David Brown in a conspiracy to enrich themselves by engaging in the actions complained of herein.

41.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants have a unity of interest and shared ownership such that gross inequity and unfairness would result if any of the Defendants were regarded as separate from each other. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants commonly work together, share common ownership, comingle funds (both their own and those stolen from others), and conduct business (and crimes) for and with one another for their joint benefit. Plaintiff is further informed and believes,

15

MS
MANCINI SHENK

and on that basis alleges, that at all times relevant herein, Defendants DB Film LLC, Hollywood COVID Testing LLC, Untitled SLA LLC, and Clear Media Fund I, LP (together, the "**Entity Defendants**") were and are owned, managed, dominated, and controlled by David Brown and Julian Brown such that there is a unity of interest and ownership between them and the Entity Defendants, so that the individuality or separateness of the Entity Defendants has ceased and adherence to the fiction of the separateness of any of the Defendants from each other would under the circumstances complained of herein sanction a fraud or promote injustice, as follows:

    a.    The Individual Defendants treated the assets and obligations of the Entity Defendants as their own, used the Entity Defendants' funds to pay personal debts or pay for personal benefits, made or authorized withdrawals of funds from the Entity Defendants for personal use, siphoned funds from and misdirected funds through the Entity Defendants for their individual benefit, made payments and took distributions of funds from the Entity Defendants when they were insolvent, spent the stolen funds for the benefit of the Entity Defendants, and had a common practice of comingling their personal assets with the assets of the Entity Defendants such that there is no economic distinction between the Entity Defendants and any other Defendant;

    b.    The Entity Defendants failed to hold annual member or shareholder meetings, maintain minutes or records, maintain adequate company records, or abide by formalities applicable by law to the Entity Defendants;

    c.    Defendants failed to adequately capitalize the Entity Defendants, leaving them insolvent and unable to pay their creditors in the ordinary course of business and leaving them in a circumstance where, at all times relevant herein, their liabilities exceeded their

16

COMPLAINT

Case No.

assets;

d.      Defendants organized the Entity Defendants with the intent to avoid, and for the sole purpose of avoiding, personal liability for their ongoing scheme and fraudulent pattern of conduct of stealing production funds from film productions; and

e.      The Entity Defendants were and are mere shells, instrumentalities, conduits and tools for the furtherance of the individual Defendants' crimes, fraud, conspiracy, and thefts.

## **FACTUAL ALLEGATIONS**

42.     In or around August 2022, the line producer for *Bucky* introduced representatives of Plaintiff to David Brown and encouraged Plaintiff to retain his services as a production accountant for *Bucky*.

43.     Plaintiff, in reliance upon the line producer's suggestion, orally agreed that David Brown would perform those services for Plaintiff. Unbeknownst to Plaintiff at that time, David Brown then on August 15, 2022, executed on his own behalf a deal memorandum setting compensation for his services that Plaintiff never agreed to. Though it was unilaterally signed by David Brown, it was never provided to Plaintiff until long after the thefts complained of herein, and it was never countersigned by Plaintiff. (*See* Exhibit A.) Moreover, Plaintiff and David Brown never agreed upon the compensation he was to be paid for providing production accountant services. Instead, without agreement, authorization, or approval from Plaintiff, and with full knowledge of the production budget for *Bucky*, David Brown unilaterally set his own compensation at approximately four times the amount budgeted for such services.

44.     Specifically, David Brown unilaterally represented and executed a document he created that stated that he would receive payment of $3,727.00 per week from Plaintiff for his services, beginning on August 15, 2022.

45.     David Brown then unilaterally hired Defendants Julian Brown and

17

COMPLAINT                                                                                    Case No.

4878-1384-8897, v. 5

1  Stephanie Brown to provide accountant services as well, increasing the accounting

2  expenditure even further beyond the amount budgeted for the project. (*See* Exhibits

3  B & C.)

4       46.     In his role as production accountant, David Brown encouraged Plaintiff

5  to authorize him to make transactions out of Plaintiff's fully funded production

6  account at First Republic Bank (the "**Production Account**") and to establish a

7  CASHét account under his control through which production costs could conveniently

8  be paid and accounted for by him (the "**CASHét Account**"), including because he

9  could then issue production debit cards to crew working on *Bucky*. In reliance upon

10  David Brown's representations of experience as a production accountant, and trusting

11  him to operate faithfully in his fiduciary role, Plaintiff agreed. Accordingly, David

12  Brown established the CASHét Account and many production cards for *Bucky*, and

13  at David Brown's request Plaintiff funded the CASHét Account in the ultimate

14  amount of $858,000.

15       47.     Thus, the facts are that Plaintiff funded the complete budget for *Bucky*

16  into the Production Account and funded the CASHét Account in the requested sum

17  using only production funds.

18       48.     Principal photography for *Bucky* commenced on September 6 and

19  concluded on October 5, 2022.

20       49.     On or about October 26, 2022, Plaintiff first learned that certain

21  production expenses that Plaintiff thought had been paid had in fact not been paid.

22  These included payments to cast and crew, among other critical payments.

23       50.     At that time, Plaintiff began an investigation of what happened to the

24  production funds. Based upon the investigation to date, which is ongoing, Plaintiff is

25  informed and believes, and on that basis alleges, that the transactions in the table

26  below were initiated and authorized by David Brown for the purpose of stealing

27  production funds for Defendants. Except where indicated otherwise, each of the

28  transactions in the table below (together, the "**Fraudulent Transactions**")

**MS**
**MANCINI SHENK**

COMPLAINT
4878-1384-8897, v. 5

Case No.

improperly sent *Bucky* production funds to: (i) one or more CASHét accounts or cards controlled by David Brown that had nothing to do with *Bucky* (the "**Wrong CASHét Account**"); (ii) an unauthorized Bank of America account that had nothing to do with *Bucky* (the "**Unauthorized BofA Account**"); (iii) an account held by Defendant Hollywood COVID Testing LLC that had nothing to do with *Bucky* (the "**Hollywood Account**"); or (iv) an account held by Defendant DB Film, LLC (the "**DBF Account**"):

| Date | From | To | Amount |
|---|---|---|---|
| Aug. 29, 2022 | CASHét Account | Hollywood Account | $15,000 |
| Aug. 30, 2022 | CASHét Account | Hollywood Account | $50,000 |
| August 31, 2022 | CASHét Account | Hollywood Account | $60,000 |
| August 31, 2022 | Production Account | DBF Account | $6,212 |
| Sep. 1, 2022 | CASHét Account | Hollywood Account | $5,000 |
| Sep. 2, 2022 | CASHét Account | Hollywood Account | $15,000 |
| Sep. 6, 2022 | CASHét Account | Hollywood Account | $25,000 |
| Sep. 10, 2022 | CASHét Account | Hollywood Account | $7,500 |
| Sep. 12, 2022 | CASHét Account | Hollywood Account | $7,500 |

COMPLAINT                                                      Case No.

4878-1384-8897, v. 5

| Sep. 13, 2022 | CASHét Account | Wrong CASHét Account | $35,257.95[1] |
| Sep. 13, 2022 | CASHét Account | Hollywood Account | $6,000 |
| Sep. 15, 2022 | CASHét Account | Hollywood Account | $60,000 |
| Sep. 16, 2022 | CASHét Account | Hollywood Account | $10,000 |
| Sep. 19, 2022 | CASHét Account | Hollywood Account | $40,000 |
| Sep. 19, 2022 | CASHét Account | Hollywood Account | $12,500 |
| Sep. 22, 2022 | Production Account | Wrong CASHét Account | $50,000 |
| Sep. 25 – Oct. 2, 2022 | CASHét Account | Wrong CASHét Account | $5,722.97[2] |
| Sep. 26, 2022 | Production Account | DBF Account | $12,500 |
| Sep. 27, 2022 | Production Account | Wrong CASHét Account | $50,000 |
| Sep. 28, 2022 | Production | DBF Account | $12,500 |

---

[1] This transaction stands out because it paid a company called AWHAP Acquisition Corp. for the purchase and installation of home plumbing and water heating equipment at David Brown's and Julian Brown's shared personal residence.

[2] Plaintiff is informed and believes, and on that basis alleges, that these transactions included the purchase of childcare equipment for Defendants David Brown and Julian Brown.


MANCINI SHENK

20

| | | Account | |
|---|---|---|---|
| Oct. 3, 2022 | Production Account | Wrong CASHét Account | $20,000 |
| Oct. 11, 2022 | Production Account | Wrong CASHét Account | $10,000 |
| Oct. 11, 2022 | Production Account | DBF Account | $4,700 |
| Oct. 13, 2022 | Production Account | Wrong CASHét Account | $1,250 |
| Oct. 13, 2022 | Production Account | Unauthorized BofA Account | $60,000 |
| Oct. 21, 2022 | Production Account | Wrong CASHét Account | $25,000 |
| Oct. 21, 2022 | Production Account | Unauthorized BofA Account | $17,500 |
| Oct. 24, 2022 | Production Account | Wrong CASHét Account | $7,000 |

Total: $631,142.92

51.    The sum improperly sent to Defendant Hollywood COVID Testing LLC is therefore at least $313,500, to the Wrong CASHét Account is therefore at least $204,230.92, to the Unauthorized BofA Account is therefore at last $77,500, and to the DBF Account is therefore at least $35,912.

52.    Plaintiff is informed and believes, and on that basis alleges, that all of the Fraudulent Transactions were for the purpose of benefitting Defendants, and each of them.

53.    There is no reasonable or innocent explanation for the quantity or systematic nature of the Fraudulent Transactions, or for the substantial sums stolen



21

1    thereby.

2    54.    As the Fraudulent Transactions were being made, David Brown

3    repeatedly explained that they were for the benefit of the *Bucky* production and

4    represented that they were legitimate transactions—and he was only able to do so

5    because the true bank records proving otherwise were in his possession and control.

6    After they were discovered to be acts of theft and wire fraud, David Brown repeatedly

7    and falsely represented that they were merely mistakes made by his office that would

8    be corrected (and for which an employee who plaintiff is informed and believes, and

9    on that basis alleges, does not even exist, was allegedly "fired"). All such

10    misrepresentations were intended to hide Defendants' thefts and fraud and to delay

11    the filing of a lawsuit.

12    55.    Additionally, David Brown paid himself $65,378 for the services he

13    purported to render while stealing the production funds. He also caused Julian Brown

14    to be paid $10,000 for services purportedly rendered by him while the funds were

15    being stolen and caused Stephanie Brown to be paid $11,008.10 for services

16    purportedly rendered by her while the funds were being stolen. Compared to the

17    amounts budget for accounting services, these amounts were and are absurd, and were

18    never agreed to, authorized, approved, or budget for by Plaintiff.

19    56.    Accordingly, inclusive of the Fraudulent Transactions and the

20    unauthorized salaries the Individual Defendants took for themselves in addition to the

21    production funds they stole, Plaintiff has had at least $717,529.02 stolen by

22    Defendants, subject to proof at trial.

23    57.    Since October 26, 2022, David Brown has engaged in an ongoing set of

24    lies to explain that the foregoing are merely mistakes and that all missing sums would

25    be or were being returned. Virtually all such representations were false.

26    58.    Moreover, while $572,074.15 of the at least $717,529.02 stolen by

27    Defendants has been recovered by Plaintiff, inexplicably some of that money was

28    returned by Defendants Untitled SLA LLC and Clear Media Fund I, LP—which never



22

4878-1384-8897, v. 5

1   should have possessed one penny of Plaintiff's money in the first place, and could

2   only have obtained Plaintiff's stolen funds through participating in the racketeering

3   enterprise alleged herein.

4   59.   Plaintiff is informed and believes, and on that basis alleges, that the

5   reason Untitled SLA LLC or Clear Media Fund I, LP had some of the stolen funds is

6   that Defendants were knowingly and intentionally using that money for other

7   purposes until Plaintiff caught them.

8   60.   In aggravation, Plaintiff is informed and believes, and on that basis

9   alleges, that David Brown forged several payment confirmations and sent them to

10   Plaintiff and to CASHét to buy a few more days before the Prior Lawsuit was filed,

11   and then intentionally bounced a check in hopes that the Prior Lawsuit would be

12   dismissed without prejudice.

13   61.   Also in aggravation, at all times relevant herein, Defendants knew, or

14   should have known, that it was likely or certain that delays and problems with the

15   *Bucky* production would be caused by the failure or refusal to return the stolen funds,

16   which would result in consequential damage to the *Bucky* production and to Plaintiff's

17   business reputation and would harm the cast and crew of *Bucky*. For those harms and

18   damages, all Defendants are liable.

19   **FIRST CLAIM FOR RELIEF**

20   **Theft Against the Individual Defendants**

21   **(Cal. Penal Code § 496)**

22   62.   Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully

23   set forth herein.

24   63.   California Penal Code § 496(a) states that "Every person who buys or

25   receives any property that has been stolen or that has been obtained in any manner

26   constituting theft or extortion, knowing the property to be so stolen or obtained, or

27   who conceals, sells, withholds, or aids in concealing, selling, or withholding any

28   property from the owner, knowing the property to be so stolen or obtained, [is guilty

23

MS

MANCINI SHENK

COMPLAINT                                                   Case No.

4878-1384-8897, v. 5

1  of the crime of theft]."

2      64.    California Penal Code § 496(c) states that "Any person who has been

3  injured by a violation of subdivision (a) or (b) may bring an action for three times the

4  amount of actual damages, if any, sustained by the plaintiff, costs of suit, and

5  reasonable attorney's fees."

6      65.    The Individual Defendants, and each of them, received Plaintiff's

7  production funds, which were and are property that has been stolen from Plaintiff or

8  that has been obtained from Plaintiff in a manner constituting theft.

9      66.    The Individual Defendants, and each of them, knew at the time that each

10  obtained Plaintiff's funds that those funds were stolen from Plaintiff.

11      67.    The Individual Defendants, and each of them, withheld and concealed,

12  and assisted each other in withholding and concealing, Plaintiff's funds.

13      68.    Through their ongoing participation in fraudulent schemes to steal movie

14  production funds in multiple past instances as well as in this instance, the Individual

15  Defendants, and each of them, whom Plaintiff is informed and believes, and on that

16  basis alleges, are family members sharing economic interests (and, in the case of

17  David and Julian, a household), are estopped from claiming lack of knowledge that

18  Plaintiff's funds were stolen.

19      69.    Through their willing participation in the *Bucky* production as evidenced

20  by their respective deal memos (*see* Exhibits A, B, and C), the Individual Defendants,

21  and each of them, are estopped from asserting lack of knowledge of the transactions

22  by which the funds were stolen. Plaintiff is informed and believes, and on that basis

23  alleges, that each assisted each other in carrying out and concealing those acts of theft.

24      70.    Accordingly, Plaintiff has had at least $717,529.02 stolen from it by each

25  of the Individual Defendants, only $572,074.15 of which has been recovered by

26  Plaintiff.

27      71.    By reason of the foregoing, the Individual Defendants are jointly and

28  severally liable in an amount at least three times greater than the sum of $145,454.87

COMPLAINT                                          Case No.

MS

MANCINI SHENK

plus all consequential damages, attorneys' fees, and litigation costs and expenses arising from Defendants' refusal to return the production funds, subject to proof at trial.

### SECOND CLAIM FOR RELIEF

### Wire Fraud Against All Defendants

### (18 U.S.C. §§ 1343 & 1349)

72.    Plaintiff repeats and realleges paragraphs 1 through 71 hereof, as if fully set forth herein.

73.    David Brown represented to Plaintiff and to the line producer hired by Plaintiff that all of the Fraudulent Transactions were legitimate transactions for the benefit of the *Bucky* production, in order that the line producer and/or Plaintiff would not discover that the transactions were fraudulent and made for the purpose of enriching Defendants, and each of them. After the transactions were discovered, David Brown continued to misrepresent the nature of the transactions set forth herein in order to induce Plaintiff to forestall litigation arising from the ongoing fraud.

74.    Defendants, in concert with David Brown, intended to misrepresent the purpose of the transactions in order to empower themselves to make payments to enrich David Brown and the other Defendants.

75.    By repeatedly authorizing and causing the processing of transactions that stole Plaintiff's production funds for the benefit of the Defendants, and by repeatedly accepting and receiving the stolen production funds with knowledge that such funds were stolen, Defendants, and each of them, violated, are violating, and continue to violate 18 U.S.C. §§ 1343 and 1349. Specifically, Defendants, and each of them, violated 18 U.S.C. §§ 1343 and 1349 by, without limitation:

   a.    participating in each separate Fraudulent Transfer and unauthorized payment of salary to themselves;

   b.    executing or conspiring to execute plans, schemes, or artifices to defraud Plaintiff via the banking system;

c.   obtaining Plaintiff's money by means of false and fraudulent pretenses with the intent to defraud, including by requesting that Plaintiff fund the CASHét accounts when they intended to steal that money rather than use it for *Bucky*;

d.   paying themselves unauthorized salaries for the services they allegedly rendered while engaging in theft and wire fraud;

e.   transmitting or causing to be transmitted wire requests, CASHét transaction requests, and other financial requests that were transmitted by means of wire, radio, digital, and/or internet communication in interstate or foreign commerce for the purpose of executing the Fraudulent Transactions; and/or

f.   causing the transmission and payment of the stolen proceeds to third parties by means of wire, radio, digital, and/or internet communication in interstate or foreign commerce for transactions benefiting only Defendants.

76.   Upon a showing that Defendants committed, are committing, or are about to commit wire fraud, conspiracy to commit wire fraud, or both, Plaintiff is entitled to a temporary restraining order, a preliminary injunction, and a permanent injunction restraining all future fraudulent conduct and other action that this Court deems just in order to prevent a continuing and substantial injury to Plaintiff.

77.   By reason of the foregoing, the Individual Defendants are jointly and severally liable in an amount at least three times greater than the sum of $145,454.87 plus all consequential damages, attorneys' fees, and litigation costs and expenses arising from Defendants' refusal to return the production funds, subject to proof at trial.

///

///

///



26

COMPLAINT                                                              Case No.

4878-1384-8897, v. 5

**THIRD CLAIM FOR RELIEF**

**RICO Violations Against All Defendants**

**(18 U.S.C. § 1962, et seq.)**

78.    Plaintiff repeats and realleges paragraphs 1 through 77 hereof, as if fully set forth herein.

79.    The conduct of Defendants alleged herein constitutes racketeering as set forth in 18 U.S.C. § 1962, et seq. Specifically, Congress has defined "racketeering" to include wire fraud or committing fraud by means of electronic transmissions over wire. Defendants have engaged in multiple instances of wire fraud in furtherance of the scheme complained of herein.

80.    As detailed below, Plaintiff alleges three different species of RICO violation. In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute.

81.    18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee. . . ."

82.    At all times relevant herein, each Defendant conducted and participated in the affairs of an ongoing racketeering enterprise through a pattern of racketeering activity in interstate commerce, in violation of 18 U.S.C. § 1962.

83.    Plaintiff is informed and believes, and on that basis alleges, that Defendants David Brown and Julian Brown formed and have since at least 2015 operated, conducted, and participated in the affairs of, and been enriched by, an association-in-fact that, through their interrelated businesses and accountancy operations and even through their marriage and household, targets the film industry

27



COMPLAINT                                                                        Case No.

4878-1384-8897, v. 5

in order to steal from and defraud lenders, financiers, and production companies, and have thus established as part of their association-in-fact an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

84.    Defendants, and each of them, are "persons" who are knowing and active participants in, members of, and beneficiaries of that "enterprise."

85.    The "enterprise" complained of herein is an ongoing organization of people and entities controlled and directed by David Brown and Julian Brown that functions as a continuing unit, that was created by them and continues to operate, grow, and evolve to effectuate Defendants' pattern of racketeering activity targeting the theft of production funds from operators in the film industry.

86.    Defendants' activities include at least two predicate acts of racketeering activity since 2015. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity under 18 U.S.C. § 1961(5). In the following paragraphs, all references to italicized plaintiffs refer to the Predicate Racketeering Cases identified above.

87.    One such act took place in or around 2015 when David Brown and related entities, in furtherance of the enterprise, defrauded the *Poteet* plaintiffs into financing through banking and/or wire transactions a feature film production from which he stole substantial sums, which through banking and/or wire transactions he siphoned through a byzantine collection of entities and accounts established for that purpose, in what has already been adjudicated to have constituted fraudulent conduct that mirrors the theft-through-account-control racketeering activity complained of herein.

88.    A second such act took place in or around 2020 when David Brown and related entities, in furtherance of the enterprise, defrauded the *828 Media* plaintiffs into financing through banking and/or wire transactions as many as four feature film productions from which he stole substantial sums, which through banking and/or wire transactions he siphoned through another byzantine collection of entities and accounts

28

MS
MANCINI SHENK

1  established for that purpose, in another set of predicate acts that mirror the theft-
2  through-account-control racketeering activity complained of herein.

3      89.    A third such act took place in or around 2020 when David Brown and
4  related entities, in furtherance of the enterprise, defrauded the *Red Card LLC* plaintiffs
5  into financing through banking and/or wire transactions a feature film production
6  from which he stole substantial sums, which through banking and/or wire transactions
7  he siphoned through another byzantine collection of entities and accounts established
8  for that purpose, in another set of predicate acts that mirror the theft-through-account-
9  control racketeering activity complained of herein.

10      90.    A fourth such act took place in or around 2020 when David Brown and
11  Julian Brown and their related entities, in furtherance of the enterprise, defrauded the
12  *8th Wonder Pictures* plaintiffs into financing through banking and/or wire transactions
13  a feature film production from which they stole substantial sums, which through
14  banking and/or wire transactions they siphoned through another byzantine collection
15  of entities and accounts established for that purpose, in another set of predicate acts
16  that mirror the theft-through-account-control racketeering activity complained of
17  herein.

18      91.    A fifth such act took place in or around 2022 when David Brown and
19  Julian Brown and their related entities, in furtherance of the enterprise, defrauded the
20  *Untitled SLA* parties into financing through banking and/or wire transactions a feature
21  film production from which they stole substantial sums, which through banking
22  and/or wire transactions they siphoned through another byzantine collection of
23  entities and accounts established for that purpose, in another set of predicate acts that
24  mirror the theft-through-account-control racketeering activity complained of herein.

25      92.    A sixth such act took place in early 2022 when David Brown and Julian
26  Brown and their related entities, in furtherance of the enterprise, defrauded the
27  Nearest Predicate Victim into financing through banking and/or wire transactions a
28  feature film production in the horror genre from which they stole substantial sums,

29



COMPLAINT                                                    Case No.

4878-1384-8897, v. 5

which through banking and/or wire transactions they siphoned through another byzantine collection of entities and accounts established for that purpose, which included the use of CASHét accounts under David Brown's control, in another set of predicate acts that mirror the theft-through-account-control racketeering activity complained of herein.

93.    Additionally, each of the Fraudulent Transactions and payments of unauthorized salary to the Defendants were events of wire fraud and of racketeering carried out by Defendants in furtherance of the enterprise.

**A.    Violation of 18 U.S.C. § 1962(c)**

94.    Plaintiff repeats and realleges each prior allegation as if fully set forth herein.

95.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, a "legal or beneficial interest in property."

96.    Plaintiff is informed and believes, and on that basis alleges, that the wire frauds engaged in by Defendants that are complained of herein, including the Fraudulent Transactions and salary payments, and each of them, were in furtherance of the enterprise formed by Defendants to defraud the film industry.

97.    At all times relevant herein, Defendants have been involved in a plan or scheme to defraud; have had the intent to defraud; and have willfully participated in the scheme to defraud, with actual knowledge of its fraudulent and criminal nature, and did foresee or could reasonably have foreseen that interstate wires would be used and were in fact used to further the scheme and transmit the proceeds of the enterprise to the variously situated Defendants, and each of them.

30

COMPLAINT                                                            Case No.

MS
MANCINI SHENK

98.    Defendants engaged in and affected interstate commerce by way of said wire frauds.

99.    The wire transactions complained of herein, including the Fraudulent Transactions and salary payments, were made in furtherance of Defendants' scheme and common course of conduct.

100.    To achieve their common goals, Defendants, and each of them, knowingly and willfully concealed from Plaintiff and its agents and representatives the unlawfulness and true nature of their activities, including by forging false banking records and lying about the purposes of expenditures that they made with the stolen funds.

101.    As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $145,454.87 plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

102.    Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus all costs of suit and reasonable attorneys' fees.

**B.    Violation of 18 U.S.C. § 1962(a)**

103.    Plaintiff repeats and realleges each prior allegation as if fully set forth herein.

104.    18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

105.    As alleged above, at all relevant times each Defendant was, and is, a "person" within the meaning of 18 U.S.C. § 1961(3), and Defendants' conduct constitutes a "pattern" of racketeering activity under § 1961(5).

31

4878-1384-8897, v. 5

MS
MANCINI SHENK

106.    At all times relevant herein, beginning in at least 2015 and continuing at least through today's date, Defendants received income derived from a pattern of racketeering activity to use or invest a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate commerce, in violation of 18 U.S.C. § 1962(a).

107.    Defendants, and each of them, received and used income derived from a pattern of racketeering activity to control, establish and operate the enterprise, which was and is engaged in and affects interstate commerce, including the Fraudulent Transactions and salary payments, and for the unlawful purpose of intentionally defrauding Plaintiff.

108.    As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $145,454.87 plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

109.    Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus all costs of suit and reasonable attorneys' fees.

**C.    Violation of 18 U.S.C. § 1962(d)**

110.    Plaintiff repeats and realleges each prior allegation as if fully set forth herein.

111.    18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

112.    As alleged above, at all relevant times each Defendant was, and is, a "person" within the meaning of 18 U.S.C. § 1961(3), and Defendants' conduct constitutes a "pattern" of racketeering activity under § 1961(5).

113.    At all relevant times, beginning in at least 2015 and continuing at least through today's date, the Defendants, and each of them, agreed to and did conspire to violate 18 U.S.C. §§ 1962(a) and (c), as alleged above and incorporated herein, in

32

MANCINI SHENK

violation of § 1962(d). The object of this conspiracy has been and is to conduct or participate in and be enriched by, directly or indirectly, the conduct of the enterprise described above, to thereby receive income derived from a pattern of racketeering activity, and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

114.   Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, including wire fraud and theft under the California Penal Code.

115.   Defendants knew that their actions alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts and to their obtaining the benefits thereof to further the conspiracy and enterprise alleged herein.

116.   Defendants, and each of them, have therefore conspired to violate 18 U.S.C. §§ 1962(a) and (c), in violation of 18 U.S.C. § 1962(d).

117.   As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $145,454.87 plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

118.   Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus all costs of suit and reasonable attorneys' fees.

## **FOURTH CLAIM FOR RELIEF**

### **Conversion / Restitution Against All Defendants**

119.   Plaintiff repeats and realleges paragraphs 1 through 118 hereof, as if fully set forth herein.

120.   Plaintiff had and has a right to possess the production funds in the correct production accounts.

121.   At all times relevant herein, Defendants knew, or should have known,

33

4878-1384-8897, v. 5

MS
MANCINI SHENK

that it was likely or certain that delays and problems would be caused by the failure or refusal to return the stolen funds, which would result in consequential damage to the *Bucky* production and to Plaintiff's business reputation.

122.    Defendants, and each of them, through the misconduct alleged herein, have knowingly and intentionally interfered with, and converted, misappropriated, received, or come into possession of, Plaintiff's production funds by transferring the production funds to accounts under their control that have nothing to do with *Bucky* and without any legal or equitable right to do so. They have also knowingly and intentionally interfered with Plaintiff's production funds by preventing Plaintiff from having access to the production funds and refusing to return the production funds, despite numerous demands that they be returned.

123.    Plaintiff did not consent to Defendants' ongoing possession of the production funds.

124.    As a result of the misconduct alleged herein, Plaintiff has been harmed and is entitled to restitution of at least the sum of $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

125.    In engaging in the wrongful conduct alleged herein, each of the Defendants are guilty of oppression, fraud, and/or malice, and as a consequence Plaintiff is entitled to and does seek recovery of punitive damages for the sake of example and by way of punishing each of them.

## **FIFTH CLAIM FOR RELIEF**

### **Breach of Fiduciary Duty Against the Individual Defendants**

126.    Plaintiff repeats and realleges paragraphs 1 through 125 hereof, as if fully set forth herein.

127.    Each of David Brown as a production accountant for Plaintiff, Julian Brown as a production accountant for Plaintiff, and Stephanie Brown as an assistant production accountant for Plaintiff, owed fiduciary duties to Plaintiff as a matter of law.

4878-1384-8897, v. 5

128.   As accountants for Plaintiff, each of them has breached their fiduciary duties to Plaintiff in numerous respects, including, but not limited to:

a.   Seeking Plaintiff's trust to establishing bank and CASHét accounts and to obtain authorization to cause transfers of production funds;

b.   Establishing bank and CASHét accounts unrelated to *Bucky* for the purpose of stealing the production funds;

c.   Telling Plaintiff and its agents that improper transfers to the Unauthorized BofA Account, the Wrong CASHét Account, the DBF Account, and the Hollywood Account were for the benefit of the *Bucky* production when they were not;

d.   Participating in the improper transfers complained of herein;

e.   Refusing to return the stolen production funds;

f.   Failing to maintain reasonable books and records of their conduct concerning *Bucky*;

g.   Failing to properly utilize CASHét, Greenslate, and other accounting services in order to conceal their embezzlement, theft, and fraud;

h.   Failing to upload production accounting records to Greenslate;

i.   Telling Plaintiff and its agents that production expenses had been paid when they had in fact not been paid, leading to Plaintiff being blindsided by demands from third parties that payments be made and being threatened with suit if payment was not made by Plaintiff, and damaging Plaintiff's reputation; and

j.   Forging false banking records to falsely represent that the stolen monies had been or would be returned.

129.   At all times relevant herein, Defendants knew, or should have known, that it was likely or certain that delays and problems would be caused by the failure

4878-1384-8897, v. 5

MS

MANCINI SHENK

or refusal to return the stolen funds, which would result in consequential damage to the *Bucky* production and to Plaintiff's business reputation.

130.   As a direct and proximate result of their actions, Plaintiff has been damaged in an amount not less than $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

131.   Plaintiff is also entitled to a constructive trust over the stolen production funds, which were obtained because the Individual Defendants abused the trust placed in them as accountants.

132.   In engaging in the wrongful conduct alleged herein, each of the Individual Defendants are guilty of oppression, fraud, and/or malice, and as a consequence Plaintiff is entitled to and seeks recovery of punitive damages for the sake of example and by way of punishing each of them.

## SIXTH CLAIM FOR RELIEF

### Aiding and Abetting Against All Defendants

133.   Plaintiff repeats and realleges paragraphs 1 through 132 hereof, as if fully set forth herein.

134.   At all times relevant to the actions described above, Julian Brown, Stephanie Brown, DB Film LLC, Hollywood COVID Testing LLC, Untitled SLA LLC, and Clear Media Fund I, LP had actual knowledge of David Brown's breaches of fiduciary duty, acts of theft, acts of wire fraud, racketeering activity, and conversions, and knowingly stood to benefit therefrom. At all times relevant to the actions described above, Julian Brown and Stephanie Brown were serving as accountants for *Bucky* with access to and knowledge of the Fraudulent Transactions and records relating thereto.

135.   Julian Brown, Stephanie Brown, DB Film LLC, Hollywood COVID Testing LLC, Untitled SLA LLC, and Clear Media Fund I, LP aided and abetted and substantially assisted David Brown's breaches of fiduciary duty, acts of theft, acts of wire fraud, racketeering activity, and conversions by, without limitation, accounting

36

MANCINI SHENK

for without disclosing to Plaintiff the Fraudulent Transactions, facilitating the creation of and/or creating the bank and CASHet account(s) through which the production funds were funneled for Defendants' benefit, taking on unauthorized employment concerning *Bucky* for the purpose of facilitating David Brown's misconduct, and preventing the return of the stolen funds so that they could be utilized by Defendants for other purposes.

136. Similarly, at all times relevant herein, to the extent David Brown did not directly lead any of the wrongdoing alleged herein, then he aided and abetted all of the other Defendants', and each of their, breaches of fiduciary duty, acts of theft, acts of wire fraud, racketeering activity, and conversions.

137. At all times relevant herein, Defendants knew, or should have known, that it was likely or certain that delays and problems would be caused by the failure or refusal to return the stolen funds, which would result in consequential damage to the *Bucky* production and to Plaintiff's business reputation.

138. As a direct and proximate result of their actions, Plaintiff has been damaged in an amount not less than $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

139. In engaging in the wrongful conduct alleged herein, Defendants, and each of them, are guilty of oppression, fraud, and/or malice, and as a consequence Plaintiff is entitled to and seeks recovery of punitive damages for the sake of example and by way of punishing each of them.

## **SEVENTH CLAIM FOR RELIEF**

### **Negligence Against All Defendants**

### **(Pled in the Alternative to All Other Claims for Relief)**

140. Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

141. In the alternative to all other claims for relief set forth herein, and despite the objective likelihood that all of the Fraudulent Transactions were intentional acts

37

MS
MANCINI SHENK

of theft, Plaintiff alleges that if it is somehow proven that all of the Fraudulent Transactions merely constitute accidental transfers to improper accounts, then Defendants, and each of them, were at the absolute minimum each negligent in authorizing, participating in, or completing the Fraudulent Transactions and payments of unauthorized salary.

142.    Defendants, as stewards of the production funds, were subject to a duty to exercise reasonable care over the production funds.

143.    Defendants, and each of them, failed to exercise reasonable care over the production funds.

144.    Defendants, as stewards of the production funds, were subject to a duty to maintain reasonable books and records relating to the production and production funds.

145.    Defendants, and each of them, failed to maintain reasonable books and records relating to the production and production funds.

146.    As a direct and proximate result of the negligent authorization, approval, participation in or completion of the Fraudulent Transactions, Plaintiff has been damaged in an amount not less than $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

## EIGHTH CLAIM FOR RELIEF

### Accounting Against All Defendants

147.    Plaintiff repeats and realleges paragraphs 1 through 146 hereof, as if fully set forth herein.

148.    Plaintiff is informed and believes, and on that basis alleges, that Defendants, and each of them, are recipients of the stolen production funds.

149.    Because of Defendants' failure and refusal to maintain or provide books and records to Plaintiff, the full extent of Defendants' misdirection of the production funds to themselves and others is unknown to Plaintiff.

150.    Plaintiff is informed and believes, and on that basis alleges, that the true

38

MANCINI SHENK

amount of money stolen from Plaintiff cannot be ascertained without an accounting from all Defendants of all transactions relating to *Bucky* or *Bucky*-related production funds, and of all transfers of *Bucky* production funds to each of them and/or their affiliates.

151.   Plaintiff is also entitled to a constructive trust over any and all production funds possessed by Defendants or their affiliates.

152.   Accordingly, Plaintiff is entitled to and does seek an accounting from each Defendant.

<u>**NINTH CLAIM FOR RELIEF**</u>

**Specific Performance Via Entry of Stipulated Judgment**

**Against Defendant David Brown**

153.   Plaintiff repeats and realleges paragraphs 1 through 139 hereof, as if fully set forth herein.

154.   Plaintiff presently holds for its benefit a contract called the Conditional Agreement to Dismiss Without Prejudice executed by and between Plaintiff and David Brown dated January 11, 2023 (the "**Dismissal Agreement**"), pursuant to which Plaintiff agreed to dismiss the Prior Lawsuit without prejudice upon certain payments to be made by Defendant David Brown, as more fully set forth therein.

155.   In furtherance of the performance of the Dismissal Agreement, Plaintiff also holds for its benefit a Stipulation for Entry of Judgment executed by and between Plaintiff's undersigned counsel and David Brown dated January 11, 2023 (the "**Stipulation to Enter Judgment**") and a Stipulated Judgment executed by and between Plaintiff's undersigned counsel and David Brown dated January 11, 2023 (the "**Stipulated Judgment**"). The Dismissal Agreement, Stipulation to Enter Judgment, and Stipulated Judgment are together referred to as the "**Stipulated Judgment Package**." A true and correct copy of the Stipulated Judgment Package is is attached as **Exhibits E**, **F and G**, respectively.

156.   In summary, the Stipulated Judgment Package required Defendant David

Brown to pay $20,000 by the close of business on January 13, 2023 in exchange for the dismissal without prejudice of all other Defendants in the Prior Lawsuit (the "**First Payment**"), and $197,000 by the close of business on February 1, 2023 in exchange for the dismissal without prejudice of all claims against Defendant David Brown in the Prior Lawsuit, and thus the dismissal **without prejudice** of the Prior Lawsuit (the "**Second Payment**").

157.   Plaintiff and Defendant David Brown provided and received adequate consideration under the terms of the Stipulated Judgment Package, and Plaintiff has performed all of its obligations under the Stipulated Judgment Package. However, Defendant David Brown has breached his obligations under the Stipulated Judgment Package by failing to make the Second Payment. As a consequence, Plaintiff is now entitled to enter the Stipulated Judgment against Defendant David Brown.

158.   Defendant David Brown paid $20,050 before the deadline for the First Payment but failed to make the Second Payment: he was late in providing the Second Payment, and then bounced the late check.

159.   Because Defendant David Brown bounced the Second Payment check and Plaintiff's bank cleared the check before reversing the transaction for insufficient funds, Plaintiff dismissed the Prior Lawsuit in its entirety without prejudice in reliance upon the representation by David Brown that the Second Payment had been made, and only after the bank represented that the funds had cleared.

160.   As a consequence, the Stipulated Judgment Package cannot be entered in the Prior Lawsuit, because the Prior Lawsuit has been dismissed without prejudice as a direct consequence of the bounced check and David Brown's false representation that he had made payment.

161.   Because Defendant David Brown did not satisfy his obligations under the Stipulated Judgment Package, Plaintiff is entitled to and prays for immediate entry of the Stipulated Judgment against Defendant David Brown in the amount due thereunder. The calculation of the amount of the Stipulated Judgment results in

MS
MANCINI SHENK

1    judgment against Defendant David Brown in the amount of $690,850.

2        162.    Accordingly, Plaintiff prays that the Court enter the Stipulated Judgment

3    against Defendant David Brown in the amount of $690,850.

4                              **TENTH CAUSE OF ACTION**

5                        **Check Kiting (Cal. Civ. Code § 1719)**

6        163.    Plaintiff repeats and realleges paragraphs 1 through 162 hereof, as if

7    fully set forth herein.

8        164.    On or about February 3, 2023, Defendant David Brown issued check

9    number 1006 in the amount of $197,750.00 to be paid to the order of Plaintiff, which

10   check Plaintiff deposited on February 3, 2023. A true and correct copy of the check

11   is attached as **Exhibit H**.

12       165.    The check was later dishonored for insufficient funds. Accordingly,

13   Defendant David Brown passed a check on insufficient funds in violation of

14   California Civil Code section 1719.

15       166.    On March 1, 2023, Plaintiff sent Defendant David Brown via certified

16   mail, return receipt requested, a Notice of Bad Check (the "**Notice**") in compliance

17   with California Civil Code section 1719. A true and correct copy of the Notice is

18   attached as **Exhibit I**.

19       167.    To date, the amount of the bad check has not been paid to Plaintiff.

20       168.    As a direct and proximate result of Defendant David Brown's actions,

21   Plaintiff has been damaged in an amount not less than $197,750 pursuant to statute,

22   subject to proof at trial, which proof may include all service charges, costs, and treble

23   damages available at law.

24                              **PRAYER FOR RELIEF**

25   **AS TO THE FIRST, SECOND AND THIRD CLAIMS FOR RELIEF:**

26       1.    Judgment in favor of Plaintiff and against the Individual Defendants, and

27   each of them, jointly and severally, in the sum of at least $436,364.61, plus treble the

28   consequential damages arising from Defendants' misconduct, subject to proof at trial.

41

COMPLAINT                                                    Case No.

**AS TO THE FOURTH CLAIM FOR RELIEF:**

2.    Judgment in favor of Plaintiff and against Defendants, and each of them, jointly and severally, in the sum of at least $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

3.    An award of punitive damages in favor of Plaintiff against Defendants, and each of them, jointly and severally.

**AS TO THE FIFTH CLAIM FOR RELIEF:**

4.    Judgment in favor of Plaintiff and against the Individual Defendants, and each of them, jointly and severally, in the sum of at least $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

5.    An award of punitive damages in favor of Plaintiff against the Individual Defendants, and each of them, jointly and severally.

**AS TO THE SIXTH CLAIM FOR RELIEF:**

6.    Judgment in favor of Plaintiff and against Julian Brown, Stephanie Brown, DB Film LLC, Hollywood COVID Testing LLC, Untitled SLA LLC, and Clear Media Fund I, LP, and each of them, jointly and severally, in the sum of at least $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

7.    An award of punitive damages in favor of Plaintiff against Julian Brown, Stephanie Brown, DB Film LLC, Hollywood COVID Testing LLC, and Untitled SLA LLC, and each of them, jointly and severally

**AS TO THE SEVENTH CLAIM FOR RELIEF:**

8.    Judgment in favor of Plaintiff and against Defendants, and each of them, jointly and severally, in the sum of at least $145,454.87, plus all consequential damages arising from Defendants' misconduct, subject to proof at trial.

**AS TO THE EIGHTH CLAIM FOR RELIEF:**

9.    An order that Defendants, and each of them, jointly and severally, provide an accounting of all transactions relating to *Bucky* or *Bucky*-related

COMPLAINT                                                                  Case No.

MS
MANCINI SHENK

production funds, and of all transfers of *Bucky* production funds to each of the Defendants and/or their affiliates.

**AS TO THE NINTH CLAIM FOR RELIEF:**

10.    Immediate entry of the Stipulated Judgment against Defendant David Brown in the amount of $690,850.00.

**AS TO THE TENTH CLAIM FOR RELIEF:**

11.    Judgment in favor of Plaintiff and against David Brown in the amount of $197,750, plus all service charges, costs, and treble damages available under California Civil Code section 1719.

**AS TO ALL CLAIMS FOR RELIEF:**

12.    For attorneys' fees, except such relief is not sought in connection with the Tenth Cause of Action.

13.    For costs of suit incurred herein, except such relief is not sought in connection with the Tenth Cause of Action.

14.    For pre- and post-judgment interest at the maximum allowable rates allowed at law, except such relief is not sought in connection with the Tenth Cause of Action.

15.    For such other and further relief as this Court may deem just and proper.

Dated: March 14, 2023                    MANCINI SHENK LLP

By: 
_____
Michael V. Mancini
Attorneys for Plaintiff BUCKY DENT
THE FILM, INC.


MANCINI SHENK

43

COMPLAINT                                                    Case No.

4878-1384-8897, v. 5

1

## **DEMAND FOR JURY TRIAL**

2  TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3       Plaintiff BUCKY DENT THE FILM, INC. hereby demands a jury trial in the

4  above-entitled action.

5

6  Dated: March 14, 2023                   MANCINI SHENK LLP

7

8

9

10  By: _____

11       Michael V. Mancini
        Attorneys for Plaintiff BUCKY DENT
        THE FILM, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44

COMPLAINT                                                    Case No.

MANCINI SHENK

# EXHIBIT "A"

**Directors Guild of America**
7920 Sunset Blvd.
Los Angeles, CA 90046
(310) 289-2000
RCForms@dga.org
**DGA**

# LOW BUDGET AGREEMENT
## UNIT PRODUCTION MANAGER AND ASSISTANT DIRECTOR DEAL MEMORANDUM

Deal Memos must be submitted no later than commencement of services,
pursuant to Basic Agreement Article 13-107.

This confirms our agreement to employ you on the project described as follows:

---

**AD/UPM INFORMATION:**

Name: David Brown

SSN# (last 4 digits): _____

Loanout: DB Film LLC

FID. #: _____

Address: 3940 Laurel Canyon Blvd. #1423

Tel. #: _____

Studio City, CA 91604

Category: ☑ Unit Production Manager ☐ 2nd Second Assistant Director
☐ First Assistant Director ☐ Additional Second Assistant Director
☐ Key Second Assistant Director ☐ 2nd Second Assistant Director - Location Manager (in NY/Chicago only)

Photography (check all that apply): ☑ Principal ☐ Second Unit ☐ Re-Shoots ☐ Add'l Photography

Salary (U.S. Dollars): Studio: $ 3,727.00 Location: $_____ per ☐ Day ☑ Week and shall be prorated thereafter

Production Fee (U.S. Dollars): Studio: $ 25.00 Location: $_____

Start Date (on or about): 8/15/2022 Guaranteed Period: _____ ☐ Days ☐ Weeks

Other Conditions (credit, suspension, per diem, deferred compensation, etc.): _____

_____

_____

---

**PROJECT INFORMATION:**

Film Title: Bucky F*cking Dent

Budget (U.S. Dollar Amount) $ _____

Location (choose one or both): ☐ Studio ☑ Distant Location (City/State or Country): Los Angeles, CA (Remote)

---

**ACCEPTED AND AGREED:**

This employment is subject to the provisions of the Directors Guild of America, Inc., Basic Agreement.

Signatory Employer (Company Name): Bucky Dent The Film, Inc.

Signatory Employer Representative Signature: _____

Date: August 24, 2022

Employee Signature: _[signature]_

Date: 8/15/2022

LB-DM-BTL

# EXHIBIT "B"

## GREENSLATE

## START FORM / DEAL MEMO

EMAIL COMPLETED FORMS TO YOUR PAYROLL COORDINATOR

| Bucky Dent the Film Inc | | Bucky Dent |
|---|---|---|
| Production Company | Signatory Company | Production Title |

| Brown, Julian, T | |
|---|---|
| Employee Name (Last, First, Middle Initial) | Social Security Number |

| 14001 Hartsook St | | Sherman Oaks | CA | 91423 |
|---|---|---|---|---|
| Permanent Address | Apt# | City | State | Zip |

| 14001 Hartsook St | | Sherman Oaks | CA | 91423 |
|---|---|---|---|---|
| Mailing Address (If Different From Above) | Apt# | City | State | Zip |

IF AN AGENT, OR OTHER 3RD PARTY RECIPIENT, SHOULD RECEIVE THE CHECK PAYMENT(S), THEN A SIGNED 'CHECK PAYMENT AUTHORIZATION' MUST BE ATTACHED.

| | / / | ○ YES ● NO | ● YES ○ NO |
|---|---|---|---|
| 1st Phone Number (Circle Type)   ○ Home ○ Cell ○ Office | Date of Birth (Required) | Minor? (Circle One) | U.S. Citizen? (Circle One) |
| | | | MALE ● FEMALE ○ NON-BINARY ○ |
| 2nd Phone Number (Circle Type) ○ Home ○ Cell ○ Office | Email Address | | Gender (Circle One) |

**ETHNIC CODE (Please check one)**

| ✓ WHITE | ☐ BLACK | ☐ HISPANIC | ☐ ASIAN | ☐ NATIVE AMERICAN | ☐ OTHER |
|---|---|---|---|---|---|

| Non-Union | Production Accountant | 2025 | 2099 | |
|---|---|---|---|---|
| Union / Local No. | Position / Job Classification | Labor Accounting Code | Fringe Accounting Code | Holiday Accrual Code |

| ● Hourly ○ Daily ○ Weekly | 29.5700 | NJ | | 8 / 15 / 2022 |
|---|---|---|---|---|
| Rate per: (Circle One) | $$$ Rate | Work State | Guaranteed Hours: | Start Date |

| .0000 | .0000 | | | |
|---|---|---|---|---|
| Box Rental Rate * | Box Rental Accounting Code | Per Diem Rate | Per Diem Accounting Code | Other Payments / Terms |

(Must Attach Box Rental Inventory)

In order to ensure compliance under the Affordable Care Act, please check the applicable employment classification box below. PLEASE NOTE: The classification will impact healthcare eligibility.

✓ Full Time Employee of the company?*

☐ Variable Hour Employee of the Company?**

☐ Corporate Owner of the company?

☐ Officer of the Company?

| Julian Brown | David Brown | David Brown |
|---|---|---|
| Employee | Prefill Start Form | Employer |
| 09/01/2022 | 09/01/2022 | 09/01/2022 |

# EXHIBIT "C"

 **GREENSLATE**

## START FORM / DEAL MEMO

EMAIL COMPLETED FORMS TO YOUR PAYROLL COORDINATOR

| Bucky Dent the Film Inc | | Bucky Dent |
|---|---|---|
| Production Company | Signatory Company | Production Title |

| Brown, Stephanie | |
|---|---|
| Employee Name (Last, First, Middle Initial) | Social Security Number ██████ |

| 606 meadowview drive | | mount juliet | TN | 37122 |
|---|---|---|---|---|
| Permanent Address | Apt# | City | State | Zip |

| 606 meadowview drive | | mount juliet | TN | 37122 |
|---|---|---|---|---|
| Mailing Address (If Different From Above) | Apt# | City | State | Zip |

IF AN AGENT, OR OTHER 3RD PARTY RECIPIENT, SHOULD RECEIVE THE CHECK PAYMENT(S), THEN A SIGNED 'CHECK PAYMENT AUTHORIZATION' MUST BE ATTACHED.

| ██████ | ██ / ██ / ██ | ○ YES ● NO | ● YES ○ NO |
|---|---|---|---|
| 1st Phone Number (Circle Type) ○ Home ○ Cell ○ Office | Date of Birth (Required) | Minor? (Circle One) | U.S. Citizen? (Circle One) |
| | ██████ | | MALE ○ FEMALE ● NON-BINARY ○ |
| 2nd Phone Number (Circle Type) ○ Home ○ Cell ○ Office | Email Address | | Gender (Circle One) |

**ETHNIC CODE (Please check one)**

| ☑ WHITE | ☐ BLACK | ☐ HISPANIC | ☐ ASIAN | ☐ NATIVE AMERICAN | ☐ OTHER |
|---|---|---|---|---|---|

| Non-Union | 1st Asst Accountant | 2025 | 2099 | |
|---|---|---|---|---|
| Union / Local No. | Position / Job Classification | Labor Accounting Code | Fringe Accounting Code | Holiday Accrual Code |

| ○ Hourly ○ Daily ● Weekly | 2,000.0000 | NJ | | 9 / 12 / 2022 |
|---|---|---|---|---|
| Rate per: (Circle One) | $$$ Rate | Work State | Guaranteed Hours: | Start Date |

| | | | | |
|---|---|---|---|---|
| Box Rental Rate * | Box Rental Accounting Code | Per Diem Rate | Per Diem Accounting Code | Other Payments / Terms |

(Must Attach Box Rental Inventory)

In order to ensure compliance under the Affordable Care Act, please check the applicable employment classification box below. PLEASE NOTE: The classification will impact healthcare eligibility.

☑ Full Time Employee of the company?*          ☐ Corporate Owner of the company?
☐ Variable Hour Employee of the Company?**     ☐ Officer of the Company?

_Stephanie Brown_
Stephanie Brown
Employee
09/12/2022

_David Brown_
David Brown
Prefill Start Form
09/12/2022

_David Brown_
David Brown
Employer
09/12/2022

# EXHIBIT "D"



**MANCINI SHENK**

MANCINI SHENK LLP
1925 Century Park East, Suite 1700  |  Los Angeles, California 90067
Direct: (424) 652-4009  |  mmancini@mancinishenk.com

November 3, 2022

## BY EMAIL AND PRIORITY OVERNIGHT DELIVERY

David Brown
3940 Laurel Canyon Blvd.
Studio City, CA 91604
moviedavid1@gmail.com &
david@clearmediafinance.com &
david@filmholdings.com

DB Film LLC
c/o David Brown
3940 Laurel Canyon Blvd.
Studio City, CA 91604
moviedavid1@gmail.com &
david@clearmediafinance.com &
david@filmholdings.com

Clear Media Finance
c/o David Brown
3940 Laurel Canyon Blvd.
Studio City, CA 91604
moviedavid1@gmail.com &
david@clearmediafinance.com &
david@filmholdings.com

Film Holdings
c/o David Brown
3940 Laurel Canyon Blvd.
Studio City, CA 91604
moviedavid1@gmail.com &
david@clearmediafinance.com &
david@filmholdings.com

**Re:**    **Demand Letter Regarding Fraud and Conversion of Production Funds**
File No. 415 - *Bucky Dent*

Mr. Brown:

I have been retained by Yale Entertainment, LLC, Bucky Dent the Film, Inc., and Bucky Dent the Movie, LLC (together, "Film Cos.") to sue you, and anyone who helped you or conspired with you, for stealing production funds.  Out of an abundance of caution, I am cc'ing your transactional counsel Harry Finkel, Esq., who this afternoon sent proposed bridge loan documents to my clients.  Please advise if you have alternative litigation counsel.

As you know, the Film Cos. are respectively the financier, production company, and managing member of that production company, for the film *Bucky F\*cking Dent* ("*Bucky*").  After being retained by Bennett Lebarre, you served as a production accountant for *Bucky*.  It appears that you used your access to the production and CASHet accounts to steal funds from the Film Cos.  This letter is the only opportunity you will be given to remedy this situation.  You must **immediately** revert to my clients all funds misdirected from the *Bucky* accounts, so that all amounts due to others for the film can immediately be paid, or you will immediately be sued.

David Brown, et al.
November 3, 2022
Page 2

If we are forced to sue, we will sue you individually and we will sue DB Film LLC, Clear Media Finance and Film Holdings, as well as any other persons or entities you own or control to which we believe you have directed ill-gotten funds, and we will seek all available remedies, including a temporary restraining order and preliminary injunction, punitive damages, and recovery of our attorney fees and costs. We implore you to take this very seriously because we will not ask again.

Our investigation to date establishes that you have stolen or, being charitable, "misdirected," at least the following funds:

- **$313,500** of funds from the production account was paid via unauthorized transactions to "Hollywood" using the CASHet system. "Hollywood" has nothing to do with *Bucky* and shares your fake mailbox address at 3940 Laurel Canyon Blvd., Studio City, CA 91604. We are informed and believe the transfers to "Hollywood" that you initiated through CASHet are payments to yourself or one of your businesses.

- **$163,250** of funds from the production account was paid to CASHet account #D50H rather than #D50J. As you know, account #D50J is the *Bucky* account and #D50H has nothing to do with *Bucky*. It is, however, purportedly the CASHet account for a different production you claim to be working on. We are informed and believe that the transfers to account #D50H that you initiated are payments to a different production in which you have a financial interest or from which you previously misdirected funds—meaning you took funds from my clients to reimburse someone else for a prior misdirection of their money.

- **$77,500** was wired, via two wires, to a Bank of America account having an account number ending in x3728. We are informed and believe that these wires, which you initiated, are payments to yourself or one of your businesses. In aggravation of these circumstances, you represented that what you alleged were accidental wires to the wrong production by a "clerk" would be fixed, but they have not been fixed and you appear to be ignoring all communications from my clients about these matters except to blame others for delays in returning those funds.

Accordingly, we believe we can already prove that you have misdirected or stolen more than **$550,000** from the Film Cos. Even worse, once the above came to light you stopped communicating with the Film Cos. about these matters, no matter how many times you were asked. You are, at this point, hiding the ball. Thus, we conclude that you stole or misdirected these funds to enrich yourself and/or pay your own debts.

But these are not the only harms you have caused. By hiding your misconduct from the Film Cos., you caused them to be blindsided when they learned the production was out of money and far over budget. This was particularly shocking to my clients because they fully funded the production in accordance with the budget. Consequently, this surprise caused the cast, crew,

David Brown, et al.
November 3, 2022
Page 3

investors, and everyone else with a financial interest in *Bucky*, or in the production of *Bucky*, to
be harmed and wrongfooted by your misconduct. By stealing or misdirecting more than 20% of
the budget for *Bucky* and hiding that from all interested parties, you caused the production to run
out of money, and then falsely blamed overages for the problems caused by your theft. Actors,
contractors and crew have gone unpaid and SAG has defaulted the production because of you.
This has caused tremendous reputational damage to Yale Entertainment and its owners and
associates, damaged the economic viability of *Bucky*, and soured relationships between my
clients and other participants in the film. And by infuriating the same people needed in a few
weeks for pickup shoots to complete *Bucky*, you have caused many of them to withhold services
until they are paid. This imperils the film's completion and subjects my clients to potentially
vast economic liability. You will be held responsible for all such losses suffered by my clients
because of your misconduct.

You have also completely failed to uphold your basic duties as an accountant,
professional, and fiduciary. Your own communications prove that as recently as October 27,
despite repeated requests for reporting that my clients made of both you and Bennett Lebarre,
you had still uploaded no reporting to the Greenslate accounting system. As of today, despite
many requests, you still have never provided evidence showing that you properly applied for the
New Jersey film and media tax credit program. These examples are not exhaustive. Until an
audit can be conducted, it will remain impossible to reconcile the film's books because of your
negligence—apart from the fact that 20% of the film's budget was misdirected.

By this letter, we demand that you **immediately** revert all stolen or misdirected funds,
**immediately** turn over all books and records and communications relating to *Bucky*,
**immediately** report as to the status of the New Jersey tax credit, and **immediately** instruct
CASHet to do the following:

- Sign over the CASHet account relating to *Bucky* to the authorized persons
  identified by the Film Cos.;

- Remove you, DB Film LLC, Bennett Lebarre, any on-site UPM, and any of your
  or their associates, as persons authorized to access, view, or transact in that
  account;

- After the authorized persons identified by the Film Cos. are made the only
  authorized persons to transact in the CASHet account relating to *Bucky*,
  immediately revert to the *Bucky* account all $313,500 that was transferred to
  "Hollywood";

- After the authorized persons identified by the Film Cos. are made the only
  authorized persons to transact in the CASHet account relating to *Bucky*,
  immediately revert to the *Bucky* account all $163,250 that was transferred to
  account #D50H; and

- Copy me on all communications accomplishing the above.

4872-3495-6861, v. 4

David Brown, et al.
November 3, 2022
Page 4

You are being afforded until the close of business on Monday, November 7, 2022, to complete all the above tasks and demands.  If you fail to do so by that deadline, you and your entities will immediately be sued.

I note with more than passing interest that as recently as yesterday afternoon you stated in an email to my clients that you were "good to wire [] tomorrow" a bridge loan of $250,000, and that you "won't hold up for docs."  (*See* November 2 email in chain entitled 'RE; Bridge Loan'.) This is simultaneously outrageous, and promising.  It is outrageous because what you appear to be doing through Clear Media Finance is offering to loan my clients, while charging them interest for the privilege, the money that you took from them.  But it is promising because it demonstrates that you admit that you have at your disposal at least $250,000 in free cash that can immediately be transferred to my clients.  I recommend you immediately pay that money to my clients with no strings attached, as partial restitution of some of the misdirected or stolen funds and compensation for the damages you have caused.

On that note, this afternoon your counsel Mr. Finkel sent along bridge loan documents for my clients' review.  As you may already have concluded, my clients reject your bridge loan offer.

Finally, to the extent that you think these issues are someone else's fault or that you can explain these issues, I encourage you to do so with documentary evidence backing up your position.  For example, you sent an email this afternoon essentially claiming that all CASHet funds were used for the production—which as far as we can tell is false (*see supra*)—and blaming an on-set UPM, clerks, and/or Bennett Lebarre for any overages or misdirected funds. The funds must be returned regardless, and on the timeline set forth herein.  But if those assertions are true, then you are invited to **immediately** prove it with genuine evidence.

This letter is sent at the outset of our investigation, and thus it is not a complete statement of facts or law relevant to these matters.  Our ongoing investigation will continue, and all of my clients' rights, remedies, objections, claims and defenses are reserved.

Sincerely,

MANCINI SHENK LLP

*Mi V. Ma*

MICHAEL V. MANCINI
Founding Partner

cc:     Harry Finkel, Esq. (*harry@creativlaw.com*)

# EXHIBIT "E"

## CONDITIONAL AGREEMENT TO DISMISS WITHOUT PREJUDICE

This Conditional Agreement to Dismiss Without Prejudice ("**Agreement**") is made and entered into as of January 11, 2023 ("**Effective Date**"), by and between Plaintiff Bucky Dent the Film, Inc., a New York corporation ("**Bucky**"), and Defendant David Brown a/k/a David Brown Levy a/k/a David Raymond Brown, an individual, (the "**Stipulating Defendant**"), with reference to the matter currently pending before the Honorable R. Gary Klausner in United States District Court, Central District of California, Case No. 2:22-cv-08422 RGK (MARx) (the "**Action**"). Bucky and the Stipulating Defendant are sometimes referred to individually as a "**Party**" and collectively as the "**Parties**" to the Agreement.

## RECITALS

A.    In or around September and October 2022, David Brown and his affiliates purported to provide certain accounting services to Bucky in connection with the production of the film *Bucky F\*cking Dent*.

B.    Bucky alleges that in late October 2022 it first discovered that in or around September and October 2022, as more fully set forth in the Complaint filed in the Action [ECF No. 1], which is hereby incorporated as if fully set forth herein, David Brown and his affiliates wrongfully obtained or misdirected in excess of US $640,000 of Bucky's production funds for the film *Bucky F\*cking Dent*.

C.    On November 17, 2022, Bucky filed the Action alleging causes of action for theft under California Penal Code Section 496(c), Wire Fraud under 18 U.S.C. §§ 1343 and 1349, RICO violations under 18 U.S.C. 1962 et seq., Conversion, Restitution, Breach of Fiduciary Duty, Aiding and Abetting the foregoing, Negligence in the alternative to the foregoing, and seeking an Accounting, and alleging entitlement to treble damages, punitive damages, all costs of suit and reasonable attorneys' fees, prejudgment and post-judgment interest, and other damages.

D.    As of January 11, 2023, Bucky has recovered exactly $552,024.15 of the sums wrongfully misdirected, though only $241,000 appears to have been directly returned by Stipulating Defendant.

E.    By this Agreement, Stipulating Defendant, in exchange for Bucky's agreement to dismiss the Action without prejudice as to all defendants if the Stipulating Defendant satisfies and fully and timely performs certain conditions and prerequisites set forth herein, agrees to make certain payments and to enter into a Stipulated Judgment against him that will be filed in the Action if the Stipulating Defendant fails to make such payments by the deadlines set forth herein.

F.    In the event of any payment default, the Parties agree that Bucky shall inform the Court that the Stipulated Judgment attached hereto, reflecting all amounts then due plus a liquidated damage amount, should be immediately entered and that Bucky shall lodge such Stipulated Judgment to be entered.

## AGREEMENT

**NOW**, **THEREFORE**, in consideration of the promises and mutual agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and incorporating the foregoing Recitals as if fully set forth herein, the Parties agree as follows:

1.    **Payment.**  As a material inducement to dismiss the Action without prejudice, Stipulating Defendant agrees to pay the sum of **$20,000** (the "**First Payment**") by no later than the close of business at 5:00 PM PST on January 13, 2023, and to pay the sum of **$197,000** (the "**Second Payment**") by no later than the close of business at 5:00 PM PST on February 1, 2023. All payments are to be made by wire pursuant to the wire instructions attached hereto as **Attachment 1**.

2.    **Agreed Dismissal of Action Without Prejudice.**  In the event the Stipulating Defendant makes full and complete payment of the First Payment as provided for in Section 1 above, Bucky will dismiss the Action as to all defendants other than Stipulating Defendant without prejudice within five business days of the date upon which the First Payment has been paid in full.  Then, in the event the Stipulating Defendant makes full and complete payment of the Second Payment as provided for in Section 1 above, Bucky will dismiss the Action in its entirety without prejudice within five business days of the date upon which the Second Payment has been paid in full.

3.    **Payment Default.**  In the event the Stipulating Defendant fails to pay the entire First Payment or entire Second Payment by the deadlines set forth in Section 1 above, such event shall constitute a default hereunder and Bucky shall have the immediate right to proceed with the procedures and filing of the agreed Stipulated Judgment as set forth in Section 4 below.

4.    **Stipulated Judgment / Treble Damages / Liquidated Damages.**  In the event that Stipulating Defendant fails to make the full First Payment or full Second Payment by the deadlines set forth in Section 1 above, all sums of the First Payment and Second Payment that have not been paid as of that date multiplied by three (to compensate Bucky for the treble damages it is entitled to recover in the Action pursuant to, inter alia, California Penal Code Section 496(c), 18 U.S.C. §§ 1343 and 1349, and 18 U.S.C. 1962, et seq.) shall be immediately due and owing from Stipulating Defendant, plus a liquidated damage amount set forth herein, which amounts shall be reflected in the Parties' agreed Stipulated Judgment that the Parties agree shall be filed with the Court immediately upon default.  The Parties agree that the liquidated damage amount, for the reasons described herein, shall be One Hundred Thousand Dollars (US $100,000).  The form of Stipulated Judgment is attached hereto as **Attachment 2**.

By way of example, if the Stipulating Defendant has timely made the First Payment in the amount of $20,000 but defaults on the entire Second Payment, then the Stipulating Defendant agrees to a stipulated judgment in the form attached hereto as Attachment 2 in the amount of $591,000 plus the liquidated sum of $100,000 as described herein, for a total stipulated judgment of Six Hundred and Ninety-One Thousand Dollars (US $691,000).  Regarding assessment and calculation of the liquidated sum of $100,000, the Parties agree that it would be impossible or inadequate to measure and precisely calculate Bucky's damages in the event of the Stipulating

2

Defendant's default for many reasons, including that: (i) Bucky's damages continue to accrue at a rapid pace because they include third party liabilities that Bucky is suffering that are increasing during the delay in repaying the monies at issue in the Action; (ii) the value of the film production that has been damaged by the acts and omissions alleged in the Action continues to plummet in amounts that are not easily ascertainable, and will continue to do so until the production can be completed, while the production cannot be completed unless the monies at issue in the Action are returned; (iii) Bucky's damages continue to accrue in the form of attorneys' fees and costs that must be incurred in order to pursue recovery of the monies at issue in the Action, which have not been returned despite past promises to do so; and (iv) Bucky has relied upon past promises to take steps to repay the monies at issue in the Action, which promises have been broken, to Bucky's past and ongoing detriment and thereby causing past, present, and ongoing reliance damages that continue to accrue.  Accordingly, the Parties agree that, in the event the Stipulating Defendant fails to make any required payment by the dates set forth in Section 1 above, then the Stipulating Defendant acknowledges and agrees that he shall additionally owe and agree to pay Bucky One Hundred Thousand Dollars (US $100,000) for such breach as liquidated damages.  The liquidated damages amount of $100,000 is intended to cover Bucky's anticipated attorneys' fees, costs, expenses, pre-judgment interest and related judgment enforcement and judgment execution costs.

The Parties together or Bucky alone shall request the Court enter judgment in favor of Bucky reflecting (1) triple the sum of all unpaid portions of the First Payment and Second Payment, plus (2) the liquidated sum of $100,000.  The Parties agree that qualifying the losses arising from the Stipulating Defendant's breach is inherently difficult insofar as all costs associated with further litigation plus reasonable attorneys' fees, costs, expenses and prejudgment interest at 10% per annum is difficult or impossible to ascertain, and further stipulate that the agreed upon sum is not a penalty nor is it intended to be a penalty, but rather a reasonable measure of damages based upon the Parties' experience, the costs of California legal counsel, the nature of the Action, the relief available to Bucky in the Action, and the nature of the losses that may result from such breach.

**5.      First and Second Payments / Stipulated Judgment Not Dischargeable.**  The Stipulating Defendant acknowledges and agrees that the First and Second Payments agreed to herein, and any and all amounts due hereunder or under the Stipulated Judgment, inclusive of any amount due after it is entered or due under any judgment entered in the Action, shall not be dischargeable under the U.S. Bankruptcy Code because all damages sought in the Action and/or agreed to herein or in the stipulated judgment, and all amounts due from the Stipulating Defendant, arise from conduct that renders any and all claims and/or debts not dischargeable under 11 U.S.C. § 523(a)(2).  The Stipulating Defendant will not seek any discharge of his liability for any claims and/or debts alleged in the Action, arising hereunder, or arising under the Stipulated Judgment or any judgment entered in the Action.

**6.      No Wrongful Possession or Fraudulent Transfer of Funds Paid to Bucky.**  The Stipulating Defendant covenants, represents and warrants that all sums paid to Bucky to date to return the monies at issue in the Action and all sums paid hereunder were, are, and shall be monies lawfully obtained by Stipulating Defendant to which no person or entity other than Bucky has a competing claim, or were, are, and shall be a direct return of the monies at issue in the Action.  In no event shall the Stipulating Defendant transfer to Bucky any sums that the

3

Stipulating Defendant knows or has reason to know were wrongfully obtained or are subject to any competing claim by any creditor or third party other than Bucky. This covenant, representation and warranty is a material inducement to Bucky entering into this Agreement, and Bucky is reliant thereon.

      **7.**    **Cooperation.** The Parties agree to cooperate fully, to execute and deliver and any all supplementary documents, and to take all additional actions which reasonably may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement without the receipt of further consideration.

      **8.**    **Notices.** Unless otherwise specifically provided herein, all notices, demands or other communications required hereunder must be in writing and will be deemed to have been fully delivered upon transmittal by <u>email</u> to the following:

| | |
|---|---|
| If to Bucky, to: | Michael V. Mancini |
| | Mancini Shenk LLP |
| | 1925 Century Park East, Suite 1700 |
| | Los Angeles, CA 90067 |
| | Email: <u>mmancini@mancinishenk.com</u> |
| | |
| | With a courtesy copy emailed to: |
| | |
| | Bucky Dent the Film, Inc. |
| | Attn: Jordan Yale Levine |
| | Email: <u>jyl@yaleproductions.com</u> |
| | |
| If to Stipulating Defendants, to: | David Brown |
| | 14001 Hartsook Ave. |
| | Sherman Oaks, CA 91423 |
| | Email: <u>david@filmholdings.com</u> |

      **9.**    **Attorneys' Fees.** If any legal action or other proceeding is brought for the enforcement or interpretation of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with this Agreement or any provision hereof, the prevailing Party shall be entitled to recover its actual attorneys' fees and court costs incurred in addition to any other relief to which it may be entitled. The hourly fees charged by each side's attorney are agreed to be "reasonable" for purposes of calculating the attorneys' fee award. The Parties shall bear their own respective attorneys' fees and costs and related expenses incurred in drafting, negotiating, and finalizing this Agreement and the matters giving rise to this Agreement.

      **10.**    **Governing Law and Jurisdiction.** This Agreement shall be governed and construed in accordance with the laws of the State of California, without reference to the conflict of laws principles thereof. Each Party hereby irrevocably consents to the exclusive jurisdiction of the United States District Court for the Central District or California, Central Division sitting within Los Angeles County, California, in connection with any litigation arising out of this Agreement or the Stipulated Judgment. The Parties have bargained for and mutually agreed to waive their right to enforce this Agreement in any other Court.

11. **Enforceability.** The Parties understand and agree that this Agreement was entered into in the context of attempting to partially resolve active litigation in the Action, and thus in the context of partial settlement discussions, and is fully enforceable. The Parties agree not to challenge this Agreement as illegal, invalid, or unenforceable, and not to challenge any term or provision of this Agreement as illegal, invalid, or unenforceable. If any Party fails to comply with the terms and conditions set forth herein, any other Party may bring an action to enforce the terms of this Agreement.

12. **Conflicting Obligations.** The Stipulating Defendant certifies that he has no outstanding agreements or obligations that are in conflict with any of the provisions of this Agreement, or that would preclude him from complying with the provisions hereof, and further certifies that he will not enter into such conflicting agreement(s) during the term of this Agreement.

13. **Dismissal Without Prejudice Only.** This Agreement has been entered into solely for the purpose of establishing a mechanism by which the Stipulating Defendant may obtain for himself and the other defendants a dismissal of the Action without prejudice. Anything said or done as part of the negotiations leading to this Agreement shall not be used in any proceeding, other than for the purposes of enforcing the terms of this Agreement and/or entering the Stipulated Judgment in Court.

14. **Advice of Independent Counsel.** The Parties, and each of them, expressly agree and acknowledge that they have been given the opportunity to consult with their own independent counsel, and further expressly agree and acknowledge that the effect and import of this Agreement and of the Stipulated Judgment, including all rights and obligations, have been fully explained to them by their own counsel. The Stipulating Defendant further acknowledges and agrees that Bucky and its counsel have repeatedly admonished him to retain counsel and that any decision he has made at any time regarding whether to obtain counsel or not has been of his own volition, free of any pressure, interference, or influence by Bucky or its counsel.

15. **Severability.** If any provision of this Agreement is determined to be invalid, unenforceable, or illegal, all other provisions shall remain valid and enforceable notwithstanding, unless the provision found to be unenforceable is of such material effect that this Agreement cannot be performed in accordance with the intent of the Parties in absence of such provision.

16. **Integrated Agreement.** No promise, inducement, or agreement other than that specifically expressed in this Agreement has been made by any of the Parties. This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties with respect to the subject matter of this Agreement and supersedes all previous understandings, whether written or oral. There are no other agreements, written or oral, express or implied, between the Parties concerning the subject matter of this Agreement. This Agreement is a fully integrated contract.

17. **Modification.** This Agreement and its terms, provisions, covenants, and conditions may not be amended, changed, altered, modified, or waived except by an express instrument in writing signed by all Parties. The Parties shall execute and deliver such further

4887-3610-0425, v. 2

instruments, documents, or papers and perform all such acts necessary or proper to carry out and effectuate the terms of this Agreement as may be reasonably requested by any Party.

**18.**    **Authority and Capacity.**  The Parties and their signatories hereunder expressly represent and warrant that they have the actual authority and capacity to execute this Agreement and that they have not assigned or otherwise transferred any rights or claims addressed by this Agreement.

**19.**    **Execution in Counterparts.**  This Agreement may be executed in one or more counterparts, all of which shall constitute one and the same document.  Counterparts may be exchanged by PDFs via email.  Each counterpart, whether an original signature, or a PDF copy, or a DocuSign signature, shall be deemed an original as against any Party who signed it.

**20.**    **No Prejudice to the Drafter.**  Each Party has had a full and complete opportunity to review this Agreement, and make suggestions or changes, and so has independent counsel for each Party.  Accordingly, each Party agrees and stipulates that this Agreement and the Stipulated Judgment are deemed to have been drafted jointly by the Parties, and no ambiguity in this Agreement or the Stipulated Judgment shall be construed in favor of or against any of the Parties.  Further, the presumption that uncertainties in a contract are interpreted against the Party causing an uncertainty to exist is hereby waived by all Parties.  Accordingly, the Parties hereby waive the benefit of California Civil Code Section 1654 and any successor or amended statute, providing that in cases of uncertainty, language of a contract should be interpreted most strongly against the Party who caused the uncertainty to exist.

**21.**    **Binding Effect.**  This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Parties hereto, and each of them.

**22.**    **Headings.**  The headings used in this Agreement are purely stylistic and are not intended by the Parties to have independent meaning or to modify in any way the terms of the Agreement.

[Continued on next page.]

6

23.    **Effective Date.**  This Agreement shall become effective as of January 11, 2023.

**IN WITNESS WHEREOF** the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

BUCKY DENT THE FILM, INC.

Dated: January ⎯⎯⎯, 2023

By:⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Its: Authorized Signatory

DAVID BROWN

Dated: January **12** , 2023

7

# ATTACHMENT 1

# FIRST REPUBLIC BANK
### It's a privilege to serve you®

## Account Name
Bucky Dent the Film Inc.

## Account Number

## Domestic Wire / ACH Instructions
Wire / Credit Funds to:

First Republic Bank
111 Pine Street
San Francisco, CA 94111

**ABA / Routing Number: 321 081 669**
**SWIFT Code: FRBBUS6S**

**Special Instructions (if any):**

Contact:

Barbara Gerges

LEXINGTON

(212) 284-6090

akkumar@firstrepublic.com

© 2018 First Republic Bank, Member FDIC and Equal Housing Lender

Save

# ATTACHMENT 2

4887-3610-0425, v. 2

MANCINI SHENK LLP
  Michael V. Mancini (S.B. #263799)
  mmancini@mancinishenk.com
  John W. Shenk (S.B. #261573)
  jshenk@mancinishenk.com
  Peter J. Most (S.B. #143963)
  pmost@mancinishenk.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (424) 652-4000
Facsimile: (424) 652-4004

Attorneys for Plaintiff
BUCKY DENT THE FILM, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCKY DENT THE FILM, INC., a New York corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN, an individual, et al.,<br><br>                    Defendants. | Case No. 2:22-cv-08422 RGK (MARx)<br>*Assigned to Hon. R. Gary Klausner*<br><br>**STIPULATED JUDGMENT** |

Plaintiff BUCKY DENT THE FILM, INC., having filed its Complaint [ECF No. 1], appears through its attorneys, Mancini Shenk LLP.

Defendant DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN, an individual ("Stipulating Defendant"), appears *pro se* pursuant to Local Rule 83-2.2.1.

Plaintiff and the Stipulating Defendant having stipulated and consented to the entry of this Judgment prior to taking any proof and without trial or adjudication of any fact or law herein, and the Court having considered the pleadings, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

JURISDICTION

1.    The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000, exclusive of interest and costs, and this action is between citizens of different States. Plaintiff is a citizen of the State of New York, and the defendants are citizens of the States of California, Wyoming, Tennessee, and Delaware.

2.    The jurisdiction of this Court over the subject matter of this action is also predicated on 18 U.S.C. § 1964 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act.

3.    This Court also has supplemental jurisdiction over Plaintiff's related California state law claims under 28 U.S.C. § 1367.

VENUE

4.    Venue in this District is proper under 28 U.S.C. § 1391.  Defendants David Brown, Julian Brown, DB Film LLC, Untitled SLA LLC, and Hollywood COVID Testing LLC reside here, a substantial part of the events giving rise to Plaintiff's claims occurred here, Plaintiff's losses were suffered in this District, the Defendants transact business in this District, and a substantial part of the property that is the subject of this action is or was at all relevant times situated in this District.

///

2

MONETARY RELIEF

5.      The Stipulating Defendant hereby agrees that immediately upon a payment default—whether such default is his failure to pay the First Payment in the sum of $20,000 by the close of business on January 13, 2023, or his failure to pay the Second Payment in the sum of $197,000 by the close of business on February 1, 2023—to permit Plaintiff to enter judgment against him in an amount three times greater than the difference of $217,000 minus any payments made to Plaintiff by Stipulating Defendant between January 10, 2023 and February 1, 2023, plus one payment of $100,000.  By way of example, if Stipulating Defendant has made timely payment of $20,000 between January 10, 2023 and February 1, 2023, but defaults on the remaining $197,000 due to Plaintiff, then the Parties agree that Stipulating Defendant shall then owe Plaintiff $591,000 plus the liquidated sum of $100,000, for a total stipulated judgment of Six Hundred and Ninety-One Thousand Dollars (US $691,000), which sum shall be <u>handwritten</u> and reflected in this Judgment.

6.      As set forth above, the Stipulating Defendant agrees and irrevocably permits Plaintiff to subtract the total amount of all payments made between January 10, 2023 and February 1, 2023 from $217,000, to multiply the difference by three, and to then add the liquidated damage amount of $100,000 to the product of such multiplication, and then <u>handwrite</u> such total sum as the amount due in the Judgment.

7.      Thus,    the    amount    due    on    this    Judgment    is: **$_____.00** [handwritten amount due].

///

///

///

///

///

///

///

3

STIPULATED JUDGMENT                                        Case No. 2:22-cv-08422

4853-9809-0057, v. 3

1

<u>RETENTION OF JURISDICTION</u>

2      8.     Jurisdiction is retained for the purpose of enabling any Party to this

3   Judgment to apply to the Court at any time for such further orders, directs, and relief

4   as may be necessary and appropriate for the purpose of carrying out this Judgment.

5      9.     The Clerk is ordered to enter this Judgment forthwith.

6

7   Dated: January 11, 2023              MANCINI SHENK LLP

8

9                                       By: _Mc V. Ma_____

10                                          Michael V. Mancini

11                                          Attorneys for Plaintiff BUCKY DENT
                                            THE FILM, INC.

12  Dated: January 11, 2023              DAVID BROWN

13

14

15                                      By: _____

16                                          David Brown
                                            *Pro Se*

17

18

19

20

21

22

23

24

25

26

27

28

4

1

## **JUDGMENT**

2       Good cause appearing, IT IS THEREFORE ORDERED AND DECREED BY

3  THE COURT that judgment in favor of Plaintiff BUCKY DENT THE FILM, INC.

4  and against Defendant DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a

5  DAVID RAYMOND BROWN, an individual, in the amount of

6  **$_____.00** [handwritten amount due] is agreed and entered,

7  and the Clerk shall enter such Judgment forthwith.

8       IT IS SO ORDERED.

9

10  Dated: _____         _____

11                                       HONORABLE  R.  GARY  KLAUSNER
                                         United States District Court Judge
12                                       Central District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

MS
MANCINI SHENK

4853-9809-0057, v. 3

# EXHIBIT "F"

MANCINI SHENK LLP
  Michael V. Mancini (S.B. #263799)
  mmancini@mancinishenk.com
  John W. Shenk (S.B. #261573)
  jshenk@mancinishenk.com
  Peter J. Most (S.B. #143963)
  pmost@mancinishenk.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (424) 652-4000
Facsimile: (424) 652-4004

Attorneys for Plaintiff
BUCKY DENT THE FILM, INC.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCKY DENT THE FILM, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN, an individual, et al.,<br><br>Defendants. | Case No. 2:22-cv-08422 RGK (MARx)<br>*Assigned to Hon. R. Gary Klausner*<br><br>**STIPULATION FOR ENTRY OF JUDGMENT** |

Plaintiff BUCKY DENT THE FILM, INC., appearing through its attorneys Michael V. Mancini, John W. Shenk and Peter J. Most of the firm Mancini Shenk LLP, and Defendant DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN ( "**Stipulating Defendant**"), appearing *pro se* pursuant to Local Rule 83-2.2.1, do hereby stipulate as follows:

     1.     This Stipulation for Entry of Judgment ("**Stipulation**") is executed

1

MS
MANCINI SHENK

between Plaintiff Bucky Dent the Film, Inc., and the Stipulating Defendant, parties to the action entitled *Bucky Dent the Film, Inc. v. David Brown, et al.*, United States District Court for the Central District of California Case No. 2:22-cv-08422 RGK (MARx) (the "**Action**").

2.    The parties to this Stipulation have determined to partially compromise this Action in accordance with the provisions of this Stipulation.

3.    The parties entered into a Conditional Agreement to Dismiss Without Prejudice (the "**Dismissal Agreement**") in which Plaintiff agreed to dismiss this Action without prejudice as to all defendants, conditioned upon timely payments under the terms of the Dismissal Agreement.  A true and correct copy of the Dismissal Agreement is attached hereto as **Exhibit A** and incorporated herein by this reference.

4.    Pursuant to the Dismissal Agreement, the Stipulating Defendant agreed to make payment of **$20,000** (the "**First Payment**") to Plaintiff by no later than the close of business on January 13, 2023, and to make additional payment of **$197,000** (the "**Second Payment**") to Plaintiff by no later than the close of business on February 1, 2023.  The parties to the Dismissal Agreement agreed that in the event the Stipulating Defendant made only partial payment of the First or Second Payments by their respective deadlines, then all amounts remaining due multiplied by three, plus additional liquidated damages in the amount of $100,000, would be due in full to Plaintiff and subject to immediate filing of this Stipulation.  For example, if Stipulating Defendant has timely paid the full First Payment of $20,000, but defaults on the entire Second Payment of $197,000, then Stipulating Defendant agrees to a stipulated judgment against him in the form attached hereto as Exhibit B in the amount of the remaining $197,000 multiplied by three, which is $591,000, plus the liquidated sum of $100,000 as described herein, for a total stipulated judgment in the amount of $691,000.  In such event, Plaintiff individually shall request that the Court enter the stipulated judgment in favor of Plaintiff reflecting the unpaid portion of the First and Second Payments plus the liquidated sum of $100,000.

2

MANCINI SHENK

4871-9101-6258, v. 4

5.      Plaintiff agrees to hold and not file this Stipulation for Entry of Judgment and proposed Stipulated Judgment unless Stipulating Defendant defaults on the First or Second Payment.

6.      In the event full payment of the First and Second Payment is not made by Stipulating Defendant by the deadlines set forth above, then the parties hereto consent to entry of the Stipulated Judgment in the form filed herewith as **Exhibit B**.

7.      The parties to this Stipulation acknowledge and agree that Defendants STEPHANIE BROWN, JULIAN BROWN a/k/a/ JULIAN RAYMOND BROWN a/k/a JULES RAYMOND, DB FILM LLC, HOLLYWOOD COVID TESTING LLC, UNTITLED SLA LLC and CLEAR MEDIA FUND I, LP  ("**Remaining Defendants**") are not parties to the Dismissal Agreement, this Stipulation, or the Stipulated Judgment, and therefore also acknowledge and agree that the Dismissal Agreement, this Stipulation, and the Stipulated Judgment do not compromise or affect any of Plaintiff's rights or claims as to the Remaining Defendants.

**IT IS SO STIPULATED.**

Dated: January 11, 2023          MANCINI SHENK LLP


By: _Mc V. Mc_____
          Michael V. Mancini
          Attorneys for Plaintiff BUCKY DENT
          THE FILM, INC.


Dated: January 11, 2023          DAVID BROWN


By: _____
          David Brown
          *Pro Se*

STIPULATION FOR ENTRY OF JUDGMENT          Case No. 2:22-cv-08422

4871-9101-6258, v. 4

# EXHIBIT "G"

MANCINI SHENK LLP
  Michael V. Mancini (S.B. #263799)
  mmancini@mancinishenk.com
  John W. Shenk (S.B. #261573)
  jshenk@mancinishenk.com
  Peter J. Most (S.B. #143963)
  pmost@mancinishenk.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (424) 652-4000
Facsimile: (424) 652-4004

Attorneys for Plaintiff
BUCKY DENT THE FILM, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCKY DENT THE FILM, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN, an individual, et al.,<br><br>Defendants. | Case No. 2:22-cv-08422 RGK (MARx)<br>*Assigned to Hon. R. Gary Klausner*<br><br>**STIPULATED JUDGMENT** |

1

1   Plaintiff BUCKY DENT THE FILM, INC., having filed its Complaint [ECF

2  No. 1], appears through its attorneys, Mancini Shenk LLP.

3   Defendant DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID

4  RAYMOND BROWN, an individual ("Stipulating Defendant"), appears *pro se*

5  pursuant to Local Rule 83-2.2.1.

6   Plaintiff and the Stipulating Defendant having stipulated and consented to the

7  entry of this Judgment prior to taking any proof and without trial or adjudication of

8  any fact or law herein, and the Court having considered the pleadings, **IT IS**

9  **HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

10  <u>JURISDICTION</u>

11   1.   The jurisdiction of this Court over the subject matter of this action is

12  predicated on 28 U.S.C. § 1332.   The amount in controversy exceeds $75,000,

13  exclusive of interest and costs, and this action is between citizens of different States.

14  Plaintiff is a citizen of the State of New York, and the defendants are citizens of the

15  States of California, Wyoming, Tennessee, and Delaware.

16   2.   The jurisdiction of this Court over the subject matter of this action is also

17  predicated on 18 U.S.C. § 1964 because this action arises, in part, under the Federal

18  Racketeer Influenced and Corrupt Organizations Act.

19   3.   This Court also has supplemental jurisdiction over Plaintiff's related

20  California state law claims under 28 U.S.C. § 1367.

21  <u>VENUE</u>

22   4.   Venue in this District is proper under 28 U.S.C. § 1391.   Defendants

23  David Brown, Julian Brown, DB Film LLC, Untitled SLA LLC, and Hollywood

24  COVID Testing LLC reside here, a substantial part of the events giving rise to

25  Plaintiff's claims occurred here, Plaintiff's losses were suffered in this District, the

26  Defendants transact business in this District, and a substantial part of the property that

27  is the subject of this action is or was at all relevant times situated in this District.

28  ///

2

MS
MANCINI SHENK

## MONETARY RELIEF

5.    The Stipulating Defendant hereby agrees that immediately upon a payment default—whether such default is his failure to pay the First Payment in the sum of $20,000 by the close of business on January 13, 2023, or his failure to pay the Second Payment in the sum of $197,000 by the close of business on February 1, 2023—to permit Plaintiff to enter judgment against him in an amount three times greater than the difference of $217,000 minus any payments made to Plaintiff by Stipulating Defendant between January 10, 2023 and February 1, 2023, plus one payment of $100,000. By way of example, if Stipulating Defendant has made timely payment of $20,000 between January 10, 2023 and February 1, 2023, but defaults on the remaining $197,000 due to Plaintiff, then the Parties agree that Stipulating Defendant shall then owe Plaintiff $591,000 plus the liquidated sum of $100,000, for a total stipulated judgment of Six Hundred and Ninety-One Thousand Dollars (US $691,000), which sum shall be <u>handwritten</u> and reflected in this Judgment.

6.    As set forth above, the Stipulating Defendant agrees and irrevocably permits Plaintiff to subtract the total amount of all payments made between January 10, 2023 and February 1, 2023 from $217,000, to multiply the difference by three, and to then add the liquidated damage amount of $100,000 to the product of such multiplication, and then <u>handwrite</u> such total sum as the amount due in the Judgment.

7.    Thus,    the    amount    due    on    this    Judgment    is: $    __690,850__    .00 [handwritten amount due].

///
///
///
///
///
///
///

MS
MANCINI SHENK

3

STIPULATED JUDGMENT                                Case No. 2:22-cv-08422
4853-9809-0057, v. 3

<u>RETENTION OF JURISDICTION</u>

8.     Jurisdiction is retained for the purpose of enabling any Party to this Judgment to apply to the Court at any time for such further orders, directs, and relief as may be necessary and appropriate for the purpose of carrying out this Judgment.

9.     The Clerk is ordered to enter this Judgment forthwith.

Dated: January 11, 2023              MANCINI SHENK LLP


By: _____
      Michael V. Mancini
      Attorneys for Plaintiff BUCKY DENT
      THE FILM, INC.

Dated: January 11, 2023              DAVID BROWN


By: _____
      David Brown
      *Pro Se*

STIPULATED JUDGMENT                          Case No. 2:22-cv-08422

MANCINI SHENK

4853-9809-0057, v. 3

## **JUDGMENT**

Good cause appearing, IT IS THEREFORE ORDERED AND DECREED BY THE COURT that judgment in favor of Plaintiff BUCKY DENT THE FILM, INC. and against Defendant DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN, an individual, in the amount of **$_____.00** [handwritten amount due] is agreed and entered, and the Clerk shall enter such Judgment forthwith.

IT IS SO ORDERED.


Dated: _____         _____
                                 HONORABLE   R.   GARY   KLAUSNER
                                 United States District Court Judge
                                 Central District of California

5

4853-9809-0057, v. 3

MS
MANCINI SHENK

# EXHIBIT "H"

**PRODUCTION ACCOUNTING LLC**
14001 HARTSOOK ST
SHERMAN OAKS CA 91423-1211

1006

11-35/3210 CA
70397

DATE _February 3, 2023_

PAY TO THE ORDER OF _Bucky Dent the Film Inc._   $ _197,750.⁰⁰_

_one hundred and ninety seven thousand + seven hundred fifty_ DOLLARS

**BANK OF AMERICA**

ACH RT 121000358

FOR_____

⑆001006⑆ ⑉121000358⑈ ▉



First Republic Bank                    02032023              23DD2DDD191D9D

>321081689<

# EXHIBIT "I"



**MANCINI SHENK**

MANCINI SHENK LLP
1925 Century Park East, Suite 1700  |  Los Angeles, California 90067
Direct: (424) 652-4009  |  mmancini@mancinishenk.com

March 1, 2023

**BY CERTIFIED MAIL (RETURN RECEIPT REQUESTED)**

David Brown
14001 Hartsook Ave.
Sherman Oaks, CA 91423

      **Re:**    **Notice of Bad Check**
             File No. 00415 - Bucky Dent Matters

Dear Mr. Brown:

    My client Bucky Dent the Film, Inc. is the payee of a check you wrote for $197,750.00 on or about February 3, 2023. The check was not paid because there were insufficient funds in the account, and the payee demands payment.

    You have 30 days from the date this demand is mailed to pay the amount of the check, a service charge of an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds, plus the costs to mail this notice, as follows:

| | |
|---|---|
| Amount of the check: | $197,750.00 |
| Service charge: | $25.00 |
| Cost to mail this demand: | $7.75 |
| Total: | **$197,782.75** |

    If you fail to pay this total within the 30-day period, you could instead be sued and held responsible to pay at least both of the following:

    (1) The amount of the check (less any partial payments made toward the amount of the check or the service charge within 30-days of the written demand).

    (2) Damages of at least one hundred dollars ($100) or, if higher, three times the amount of the check up to one thousand five hundred dollars ($1,500).

    This demand is made under California Civil Code § 1719, a copy of which is attached.

David Brown
March 1, 2023
Page 2

You can contact the payee through my offices as follows: Michael V. Mancini, MANCINI SHENK LLP, 1925 Century Park East, Suite 1700, Los Angeles, CA 90067, (424) 652-4009, mmancini@mancinishenk.com.

You may wish to contact a lawyer to discuss your legal rights and responsibilities.

Sincerely,

MANCINI SHENK LLP

MICHAEL V. MANCINI
Founding Partner

4877-0765-4740, v. 1

---

West's Annotated California Codes
  Civil Code (Refs & Annos)
    Division 3. Obligations (Refs & Annos)
      Part 3. Obligations Imposed by Law

West's Ann.Cal.Civ.Code § 1719

§ 1719. Dishonored checks; liability; demands for payment; stop payments; notice; penalties, damages and service charges; assignees

Currentness

(a)(1) Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for the amount of the check and a service charge payable to the payee for an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check to that payee passed on insufficient funds.

(2) Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for damages equal to treble the amount of the check if a written demand for payment is mailed by certified mail to the person who had passed a check on insufficient funds and the written demand informs this person of (A) the provisions of this section, (B) the amount of the check, and (C) the amount of the service charge payable to the payee. The person who had passed a check on insufficient funds shall have 30 days from the date the written demand was mailed to pay the amount of the check, the amount of the service charge payable to the payee, and the costs to mail the written demand for payment. If this person fails to pay in full the amount of the check, the service charge payable to the payee, and the costs to mail the written demand within this period, this person shall then be liable instead for the amount of the check, minus any partial payments made toward the amount of the check or the service charge within 30 days of the written demand, and damages equal to treble that amount, which shall not be less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500). When a person becomes liable for treble damages for a check that is the subject of a written demand, that person shall no longer be liable for any service charge for that check and any costs to mail the written demand.

(3) Notwithstanding paragraphs (1) and (2), a person shall not be liable for the service charge, costs to mail the written demand, or treble damages if he or she stops payment in order to resolve a good faith dispute with the payee. The payee is entitled to the service charge, costs to mail the written demand, or treble damages only upon proving by clear and convincing evidence that there was no good faith dispute, as defined in subdivision (b).

(4) Notwithstanding paragraph (1), a person shall not be liable under that paragraph for the service charge if, at any time, he or she presents the payee with written confirmation by his or her financial institution that the check was returned to the payee by the financial institution due to an error on the part of the financial institution.

(5) Notwithstanding paragraph (1), a person shall not be liable under that paragraph for the service charge if the person presents the payee with written confirmation that his or her account had insufficient funds as a result of a delay in the regularly scheduled transfer of, or the posting of, a direct deposit of a social security or government benefit assistance payment.

---

(6) As used in this subdivision, to "pass a check on insufficient funds" means to make, utter, draw, or deliver any check, draft, or order for the payment of money upon any bank, depository, person, firm, or corporation that refuses to honor the check, draft, or order for any of the following reasons:

(A) Lack of funds or credit in the account to pay the check.

(B) The person who wrote the check does not have an account with the drawee.

(C) The person who wrote the check instructed the drawee to stop payment on the check.

(b) For purposes of this section, in the case of a stop payment, the existence of a "good faith dispute" shall be determined by the trier of fact. A "good faith dispute" is one in which the court finds that the drawer had a reasonable belief of his or her legal entitlement to withhold payment. Grounds for the entitlement include, but are not limited to, the following: services were not rendered, goods were not delivered, goods or services purchased are faulty, not as promised, or otherwise unsatisfactory, or there was an overcharge.

(c) In the case of a stop payment, the notice to the drawer required by this section shall be in substantially the following form:

NOTICE

To:

(name of drawer)

is the payee of a check you wrote

(name of payee)

for $ .................................... The check was not paid because you stopped

(amount)

payment, and the payee demands payment. You may have a good faith dispute as to whether you owe the full amount. If you do not have a good faith dispute with the payee and fail to pay the payee the full amount of the check in cash, a service charge of an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check passed on insufficient funds, and the costs to mail this notice within 30 days after this notice was mailed, you could be sued and held responsible to pay at least both of the following:

(1) The amount of the check.

(2) Damages of at least one hundred dollars ($100) or, if higher, three times the amount of the check up to one thousand five hundred dollars ($1,500).

If the court determines that you do have a good faith dispute with the payee, you will not have to pay the service charge, treble damages, or mailing cost. If you stopped payment because you have a good faith dispute with the payee, you should try to work out your dispute with the payee. You can contact the payee at:

(name of payee)

(street address)

(telephone number)

You may wish to contact a lawyer to discuss your legal rights and responsibilities.

(name of sender of notice)

(d) In the case of a stop payment, a court may not award damages or costs under this section unless the court receives into evidence a copy of the written demand that, in that case, shall have been sent to the drawer and a signed certified mail receipt showing delivery, or attempted delivery if refused, of the written demand to the drawer's last known address.

(e) A cause of action under this section may be brought in small claims court by the original payee, if it does not exceed the jurisdiction of that court, or in any other appropriate court. The payee shall, in order to recover damages because the drawer instructed the drawee to stop payment, show to the satisfaction of the trier of fact that there was a reasonable effort on the part of the payee to reconcile and resolve the dispute prior to pursuing the dispute through the courts.

(f) A cause of action under this section may be brought by a holder of the check or an assignee of the payee. A proceeding under this section is a limited civil case. However, if the assignee is acting on behalf of the payee, for a flat fee or a percentage fee, the assignee may not charge the payee a greater flat fee or percentage fee for that portion of the amount collected that represents treble damages than is charged the payee for collecting the face amount of the check, draft, or order. This subdivision shall not apply to an action brought in small claims court.

(g) Notwithstanding subdivision (a), if the payee is the court, the written demand for payment described in subdivision (a) may be mailed to the drawer by the court clerk. Notwithstanding subdivision (d), in the case of a stop payment where the demand is mailed by the court clerk, a court may not award damages or costs pursuant to subdivision (d), unless the court receives into evidence a copy of the written demand, and a certificate of mailing by the court clerk in the form provided for in subdivision (4) of Section 1013a of the Code of Civil Procedure for service in civil actions. For purposes of this subdivision, in courts where a single court clerk serves more than one court, the clerk shall be deemed the court clerk of each court.

(h) The requirements of this section in regard to remedies are mandatory upon a court.

(i) The assignee of the payee or a holder of the check may demand, recover, or enforce the service charge, damages, and costs specified in this section to the same extent as the original payee.

(j)(1) A drawer is liable for damages and costs only if all of the requirements of this section have been satisfied.

(2) The drawer shall in no event be liable more than once under this section on each check for a service charge, damages, or costs.

(k) Nothing in this section is intended to condition, curtail, or otherwise prejudice the rights, claims, remedies, and defenses under Division 3 (commencing with Section 3101) of the Commercial Code of a drawer, payee, assignee, or holder, including a holder in due course as defined in Section 3302 of the Commercial Code, in connection with the enforcement of this section.

**Credits**

(Added by Stats.1983, c. 522, § 1. Amended by Stats.1985, c. 196, § 1; Stats.1986, c. 225, § 1; Stats.1986, c. 708, § 1; Stats.1987, c. 4, § 1, eff. March 17, 1987; Stats.1990, c. 599 (S.B.2130), § 1; Stats.1994, c. 926 (A.B.2533), § 1; Stats.1995, c. 134 (A.B.522), § 1; Stats.1996, c. 1000 (A.B.2643), § 1; Stats.1998, c. 931 (S.B.2139), § 14, eff. Sept. 28, 1998.)

**Editors' Notes**

### LAW REVISION COMMISSION COMMENTS

1998 Amendment

Subdivisions (f) and (g) of Section 1719 are amended to accommodate unification of the municipal and superior courts in a county. Cal. Const. art. VI, § 5(e).

A limited civil case is within the original jurisdiction of the municipal court or of the superior court in a county in which there is no municipal court. Cal. Const. art. VI, 10 (superior court jurisdiction); Code Civ. Proc. §§ 85, 85.1 (limited civil cases). See also Code Civ. Proc. §§ 91, 904.2, 1085 (trial procedures and writ and appellate jurisdiction for limited civil cases). [28 Cal.L.Rev.Comm. Reports 51 (1998)].

Notes of Decisions (20)

West's Ann. Cal. Civ. Code § 1719, CA CIVIL § 1719
Current with all laws through Ch. 997 of 2022 Reg.Sess.

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.